HESTER, Judge:
 

 This case involves five separate appeals which arose out of a mortgage foreclosure action instituted by the mortgagees Leedom against: 1) the mortgagors Spanos, 2) a large number of homeowners who purchased their properties subject to a single prior mortgage executed by Spanos and from which a forged mortgage release later was filed by an unidentified individual, and 3) the sureties, Surricks, who had guaranteed payment by the original mortgagors to the mortgagees. The jury rendered a verdict in favor of the mortgagees and against Spanos, the sureties, and the homeowners. On July 1, 1992, the Delaware County Court of Common Pleas denied post-trial notions and molded the jury verdict in favor of the mortgagees and against the sureties and the homeowners by eliminating a purported increase in the mortgage interest rate
 
 *24
 
 as not binding on them. The court retained intact the original verdict against the mortgagors, which included the claimed increase in the interest rate. The mortgagees then praeciped for entry of judgment against the sureties and the homeowners, and, on July 15, 1992, the trial court directed entry of judgment. The sureties appealed from the judgments entered against them on their guarantee in favor of the mortgagors and in favor of the homeowners. In addition, the homeowners appealed the judgment entered against them in favor of the mortgagees.
 
 [1]
 
 By order dated December 14, 1993, we consolidated the appeals for disposition. We reverse.
 

 The record reveals the following. Appellants Robert and Jean Surrick, the sureties, appealed from judgment entered against them in a mortgage foreclosure action instituted by Varrell D. Leedom and her now deceased husband, Charles L. Leedom, appellees. The jury found appellants jointly and severally liable as co-sureties to appellees on a mortgage debt owed by Vincent and Thomas Spano t/a Haverford 2 Associates (hereinafter Spanos). Appellees had owned twelve acres of land situated in Upper Providence Township, Delaware County, west of the city of Philadelphia, and formerly known as the Rose Tree Race Track (the “property”). Robert B. Surrick, an attorney, and his wife owned approximately four acres of land which adjoined the property. In 1971, in consideration of a purchase price of $279,000, appellees executed an agreement to sell the property to the Surricks, contingent upon the property being re-zoned to permit the construction of multiple occupancy residential dwellings.
 

 The township zoning board subsequently denied the request for a change in zoning. This decision was appealed and ultimately reversed by our Supreme Court.
 
 See Surrick v. Zoning Board of Upper Providence Township,
 
 476 Pa. 182, 382 A.2d 105 (1977). Following this ruling, Robert Surrick
 
 *25
 
 persuaded appellees to sell the property directly to Spanos on the same terms as agreed rather than selling to him, and then he assigned his purchase agreement to Spanos.
 
 [2]
 
 Spanos planned to construct a ninety-seven townhouse development in four stages. Surricks’ four acres which adjoined the site were included in the development. At the closing in October, 1978, the construction lender insisted on a first mortgage position, and therefore, appellees accepted a second mortgage in the amount of the purchase price but with guarantees by appellants of full repayment.
 
 [3]
 
 The mortgage was payable in four yearly installments with an interest rate of eight and one-half percent.
 

 The first three stages of the development were built and marketed. Appellees executed mortgage releases for each of the three stages of the project as each stage was completed. Spanos timely paid the first three installments of the mortgage debt. Spanos subsequently informed appellees that they were having difficulty in selling the townhouses in the fourth stage as a consequence of the economy and higher interest rates. Spanos indicated that they could not pay the final balloon installment of $104,000 due October 10, 1981. No payment of principal or interest on this debt since has been made to appellees by either Spanos or appellants.
 

 Negotiations followed among the Spanos, appellees, and appellants that began in 1981, and ceased in 1983. On September 22, 1981, Spanos made a “good faith” payment of $25,000 which was applied to one year of interest and was the
 
 *26
 
 last payment Spanos made. Spanos then traveled to Florida to convince appellees to accept immediate partial payment of a reduced amount in return for a corrected deed and a mortgage release of the remaining subdevelopment. Appellees signed a corrected deed (in order to show that their title came from a trust rather than from an estate) which subsequently was recorded. Appellees, however, refused to sign the mortgage release since they did not accept Spanos’s compromise. No written resolution regarding repayment of the mortgage debt was reached.
 

 Instead, appellees reached an oral agreement with Spanos to extend the period to repay the debt in exchange for payment of an increased interest rate of “nineteen percent” on the remaining balance rather than “eight and one-half percent.” Formal notice of this mortgage modification was not sent to the appellants as the sureties and consequently, appellants Surrick never agreed to be bound by this increase in the interest rate. At trial, Robert B. Surrick stated his conclusion that he understood that appellees had accepted the compromise since the corrected deed was recorded.
 

 The parties stipulated that a single mortgage release, with the forged signatures of appellees, was recorded which encompassed the fourth stage of the development immediately preceding the sale of the remaining townhouses. The title company did not detect the forgery, and consequently, the purchasers of the townhouses in the fourth stage (hereinafter referred to as “Homeowners”)
 
 [4]
 
 now hold title to their property subject to the second mortgage of Spanos in favor of appellees.
 

 There is little record evidence of further negotiations between 1983 and 1989, when appellees finally instituted this action against Spanos, appellants, and Homeowners. The Spanos have not paid either principal or interest on the extension of the mortgage. The trial court entered a molded verdict in the amount of $583,579.13 against Spanos as mortgagors, reflecting the full interest rate increase, and a judg
 
 *27
 
 ment in the amount of $230,054.24 against appellants, which does not include the interest rate increase. Charles Leedom since has died and Robert and Jean Surrick have divorced. This appeal followed entry of the molded judgments.
 

 Mortgagees vs. Sureties
 

 Appellants first argue that appellees’ failure to institute an action against them on their guaranty within six years of default by Spanos results in appellees’ claim being barred by the six-year limitations period for claims based upon contracts.
 
 See
 
 42 Pa.C.S. § 5527. Surricks contend the limitations period began to run automatically as soon as the debt matured and Spanos failed to pay. Appellants rely upon
 
 First National Consumer Discount Co. v. McCrossan,
 
 336 Pa.Super. 541, 486 A.2d 396 (1984) (guaranty of payment of a note “when due” is actuated upon nonpayment at maturity and the guarantor warrants payment at a particular time, and not after pursuit and insolvency of the principal debtor). They contend that even though Spanos defaulted in 1981 by failing to make the final balloon payment, no action was instituted against appellants until September 30, 1989. Appellants assert that appellees were obligated to institute an action on the guarantee within a reasonable time after appellants were aware that the Spanos had defaulted and failed to do so. We agree.
 

 Instantly, the trial court concluded that, although the guarantee
 
 [5]
 
 given by appellants does not itself require that notice of a default first must be given before commencement of a claim or actuation of the guarantee, the statute of limitations on the guarantee did not begin to run until appellees elected to declare Spanos, as the principal debtors, to be in default and made a demand upon appellants to pay as the sureties.
 
 *28
 
 In essence, this means the sureties are bound by the same limitations period as their principals, the mortgagors. Otherwise, when and what is considered a default by the mortgagors may vary or be premature since they may not elect to declare a default and attempt a “work out.” The trial court relied upon
 
 Budget Charge Accounts, Inc. v. Shapson and Schwartz,
 
 35 Pa. D. & C.2d 724 (1963) (Bucks County). Accordingly, it determined that the statute of limitations would not begin to run until a demand was made upon appellants as sureties, which occurred immediately prior to instituting this action.
 

 We agree with appellants that
 
 First National Consumer Discount Co. v. McCrossan, supra,
 
 holds that the debtor does not have to be pursued and found insolvent before the surety may be held liable and the claim matures. Further, we conclude that the limitations period begins to run within a reasonable time after a material default has occurred. As a general rule, a statue of limitations begins to run when a plaintiffs cause of action arises or accrues.
 
 Thorpe v. Schoenbrun,
 
 202 Pa.Super. 375, 337, 195 A.2d 870, 872 (1963); 51 Am.Jur.2d,
 
 Limitation of Actions
 
 § 126. In a contract case, a cause of action accrues when “there is an existing right to sue forthwith on the breach of contract.”
 
 Thorpe v. Schoenbrun, supra
 
 (citing 22 P.L.E.,
 
 Limitation of Actions
 
 § 54).
 
 See also: Kapil v. Association of Pa. State College and Univ. Faculties,
 
 504 Pa. 92, 99, 470 A.2d 482, 485 (1983) (cause of action accrues when plaintiff first could have maintained action to a successful conclusion); 51 Am.Jur.2d,
 
 Limitations of Actions
 
 § 107 (cause of action accrues the moment the right to commence an action comes into existence).
 

 It is a fundamental principle of surety law that upon default by the principal, both principal and surety thereupon become liable on the original undertaking.
 
 See: Plummer v. Wilson,
 
 322 Pa. 118, 121, 185 A. 311, 313 (1936).
 
 See also: Keystone Bank v. Flooring Specialists, Inc.,
 
 513 Pa. 103, 112 n. 6, 518 A.2d 1179, 1184 n. 6 (1986);
 
 Lincoln Bank of Erie v. Gem City Wholesale Grocery Co.,
 
 286 Pa. 421, 425, 133 A. 554,
 
 *29
 
 555 (1926);
 
 Homewood People’s Bank v. Hastings,
 
 263 Pa. 260, 265, 106 A. 308, 310 (1919);
 
 Pittsburg Construction Co. v. West Side Belt Railroad Co.,
 
 227 Pa. 90, 95, 75 A. 1029, 1030 (1910),
 
 aff'd
 
 219 U.S. 92, 31 S.Ct. 196, 55 L.Ed. 107 (1911);
 
 C.M. Eichenlaub Co. v. Fidelity & Deposit Co. of Md.,
 
 293 Pa.Super. 11, 14, 437 A.2d 965, 966-67 (1981).
 
 Accord:
 
 12 Am.Jur.2d,
 
 Bills and Notes
 
 § 1055; 22 P.L.E.,
 
 Limitation of Actions
 
 § 58. Thus, the creditor’s cause of action against the surety accrues upon material default by the debtor.
 
 See In re Fidelity America Financial Corp. v. Litt,
 
 35 B.R. 310 (E.D.Pa.Bankr.1983) (cause of action against a surety arose when the underlying contract was breached).
 

 Postponement of the commencement of the limitation until the creditor elects to make demand on the surety places exclusive control of the statutory period in the hands of the creditor. By refusing to make a demand, he can defer the running of the statute of limitations indefinitely. This contravenes the underlying purpose for statutes of limitations and nullifies the benefits therefrom.
 
 See: Volpe v. Johns-Manville Corp.,
 
 323 Pa.Super. 130, 141, 470 A.2d 164, 170 (1983).
 
 Accord: Bell v. Brady,
 
 346 Pa. 666, 670, 31 A.2d 547, 549-50 (1943) (statute of limitations should not be extended by the plaintiffs act or failure to act);
 
 Gurenlian v. Gurenlian,
 
 407 Pa.Super. 102, 113 n. 2, 595 A.2d 145, 150 n. 2 (1991) (plaintiff cannot defer the running of the statute of limitations for his own convenience).
 

 With respect to the statute of limitations, our Supreme Court has observed:
 

 a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period.
 

 Pocono Int’l Raceway, Inc. v. Pocono Produce, Inc.,
 
 503 Pa. 80, 84, 468 A.2d 468, 471 (1983) (emphasis added). This duty is not excused because of mistake, misunderstanding, or lack of knowledge.
 
 Id.
 

 
 *30
 
 In the instant case, the parties are agreed that the developer went into default on October 10, 1981. The present action was not commenced until September 20, 1989. By then the action against appellants was barred by the applicable statute of limitations.
 
 [6]
 
 No notice of demand was made upon appellants as sureties from the time of Spanos’s material default until the date that this action was instituted.
 
 [7]
 
 Consequently, we conclude that appellees’ action against appellants is barred by the statute of limitations. Since we find that appellants’ action is time-barred, it is unnecessary to reach the remaining issues which they raise.
 

 Homeowners vs. Sureties
 

 Appellants assert the trial court erred in entering the molded jury verdict against them and in favor of Homeowners as subrogees to the judgment against Homeowners in favor of appellees as mortgagees. Appellants contend that, as sureties, they stand in no higher position than appellees stand as the original creditor. Since appellees should not be entitled to judgment against the sureties, appellants argue that Homeowners, as subrogees to the judgment in favor of appellees, are not entitled to a judgment against them on their guarantee of Spanos. Moreover, there is no duty as sureties running from them to Homeowners.
 

 We agree. Under common law subrogation, Homeowners have a claim against Spanos and through mortgagees against appellees for Spanos’s failure to pay the mortgage debt on demand and for selling houses to them based on a forged partial release that was not executed by appellees.
 
 *31
 
 Since appellees are time-barred in their claim against appellants, Homeowners also are time-barred since their claim under the surety agreement arises under appellees’ claim. Homeowners’ remedy instead will lie with claims against their title insurance carriers.
 

 Sureties vs. Mortgagors
 

 Appellants contend that the trial court erred in not granting them judgment notwithstanding the jury verdict against Spa-nos pursuant to their post-trial motions. The court required that liability first must be fixed on the guarantee before they could obtain judgment against Spanos. This requirement no longer applies since we have found appellees’ action is time-barred. Since we have found that appellants are not now obligated to pay appellees on their guarantee, it follows that appellants are not entitled to an immediate judgment back against Spanos.
 

 Homeowners vs. Mortgagors
 

 We now address the claims asserted by Homeowners in their appeal. Homeowners argue that the court should have found that appellees equitably were estopped in their claim against Homeowners’ title to the purchased properties resulting from the non-payment of the mortgage by the Spa-nos as a matter of law. In other words, they contend that a six-year delay by appellees in filing suit after the initial default by Spanos was not justified. This delay led to reliance by Homeowners in purchasing their properties on the presumption that the title was unencumbered. Otherwise, Homeowners assert they would not have purchased their homes if they had known of the default even though a forged mortgage release was filed. They rely upon
 
 Union National Bank of Little Rock v. Cobbs,
 
 389 Pa.Super. 509, 567 A.2d 719 (1989), and
 
 Fleet Real Estate Funding Corp. v. Smith,
 
 366 Pa.Super. 116, 530 A.2d 919 (1987) (each holding that failure to exercise diligence in following Federal Housing Authority lending procedures could be asserted as an equitable defense in a foreclosure proceeding at law). Finally, they contend that a
 
 *32
 
 forged mortgage release passes them unencumbered title.
 
 See United States ex rel. Marcus v. Morris,
 
 360 Pa. 298, 62 A.2d 43 (1948). Therefore, they contend the trial court erred in refusing to grant them judgment n.o.v.
 

 We reject this contention. Our standard of review on appeal from the denial of judgment n.o.v. is clear.
 
 Seewagen v. Vanderkluet, Inc.,
 
 338 Pa.Super. 534, 488 A.2d 21 (1985) (standard of review of denial of a request for a judgment n.o.v. is to decide if there is competent evidence to sustain the verdict giving the verdict winner the benefit of every reasonable inference). As mortgage foreclosure is an action at law rather than at equity, equitable defenses may be asserted only in certain instances.
 
 See Fleet Real Estate Funding Corp. v. Smith, supra.
 
 The cases cited by Homeowners concern governmental regulations for handling defaulted mortgages which were deemed incorporated into the mortgage agreements, so that compliance with the regulations by the lenders was required before they could proceed in a foreclosure action. There, the claim was that the mortgagors acted too quickly. Here, Homeowners are asserting equitable estoppel from forbearance also rises as an equitable defense as a matter of law in the foreclosure action.
 

 We disagree. We find no basis to conclude that appellees owed Homeowners a duty of due diligence or were precluded from their right to forebear in collecting the debt owed to them. Appellees did not make any positive representations to Homeowners through their forbearance. Homeowners did not establish that appellees had any knowledge whatsoever of the forged mortgage release. Thus, we find Homeowners cannot assert any basis recognized at law for asserting equitable estoppel from appellees’ forbearance as a matter of law. Moreover, the issue of lack of diligence by appellees in pursuing their claim was submitted to the jury as an issue of fact and was decided adversely as to Homeowners. Finally, the bar against an action on the guarantee does not apply to the mortgage foreclosure action.
 

 
 *33
 
 Next, Homeowners claim that there is no basis in the record to hold their titles subject to the mortgage obligation owed to appellees by Spanos. They maintain that they would not have purchased the property had this mortgage not been released relative to their properties. They assert that they are fault free and have the right to rely on public records. Consequently, they contend they should have been granted judgment notwithstanding the verdict vis-a-vis appellees.
 

 This contention must be rejected. It is correct that Homeowners are the party least related to the forged document. Nevertheless, this claim is similar to their claim of equitable estoppel resulting from lack of due diligence by appellees, which was rejected by the jury. Finally,
 
 United States ex. rel. Marcus v. Morris, supra,
 
 cited by Homeowners for the proposition that the forged release gave them unencumbered title is inapplicable since it was the seller in that case who forged the document. In this instance, it is not clear who forged the document. Thus, the consequences of the forged release cannot be placed upon appellees as the mortgagees. As the forged release may be rendered void, the consequence is that Homeowners’ title is subject to the mortgage in favor of appellees. Without any duty owed by appellees to Homeowners, we find there is no basis to grant them judgment notwithstanding the verdict.
 

 Next, Homeowners contend that the trial court erred in failing to instruct the jury regarding application of laches. Again, the claim is that appellees waited too long in filing suit after they had knowledge of default by Spanos. They rely upon
 
 Suplee v. Leedom,
 
 302 Pa.Super. 39, 448 A.2d 83 (1982), which applied laches as a defense in a suit for specific performance of a land purchase. We conclude the trial court correctly denied this request. Laches is not a defense in a court of law.
 
 Beech v. Ragnar Benson, Inc.,
 
 402 Pa.Super. 449, 587 A.2d 335 (1991),
 
 petition for allowance appeal granted,
 
 527 Pa. 627, 592 A.2d 1295 (1991).
 
 Suplee v. Leedom, supra,
 
 is not applicable since it involved an equity action to compel specific performance. The current action was at law. Hence, there was no valid basis for the request.
 

 
 *34
 
 Finally, Homeowners argue that the trial court erred in refusing to instruct the jury regarding the status of Homemakers as bona fide purchasers for value. They contend that they justifiably relied on the state of the public record in purchasing their properties, and that the state of the record resulted from appellees’ unjustified delay in filing suit. Since they paid for their property without knowledge of the defects in the title they assert they are entitled to unencumbered title as bona fide purchasers for value.
 

 We note, however, that Homeowners can point to no basis from which to impute that appellees had any knowledge that a forged mortgage release had been filed. Appellees lived in Florida following the sale to Spanos, and did not return to the immediate area. There is no case cited by Homeowners to support the proposition that they may rely on a forged document to assert their status as bona fide purchasers for value.
 
 See Brown v. Henry,
 
 106 Pa. 262 (1884) (our Supreme Court rejected a claim that a subsequent purchaser could recover based on a forged satisfaction of a mortgage);
 
 Lancaster v. Smith,
 
 67 Pa. 427 (1871) (purchaser could not assert a claim against seller for a forged mortgage satisfaction absent conduct by seller that raises estoppel).
 

 Homeowners also cannot point to any knowledge, duty, or negligence by appellees related to the forged mortgage release which entitles them to impute appellees with responsibility for it. Thus, Homeowners are entitled to rely on the mortgage release only if they can show that it was signed by appellees as mortgagees.
 
 See
 
 21 P.S. § 720-2 (mortgage satisfaction effective if it is duly executed by mortgagee). Contrary to assertions by Homeowners, a duty by appellees to correct the situation is not established presumptively merely from the recording of the release unless there is no evidence that appellees had knowledge that it was forged. Accordingly, we conclude the trial court correctly determined that there was no basis for the assertion by Homeowners of their status as bona fide purchasers.
 

 
 *35
 
 The result is that Homeowners and Spanos are liable to appellees on the mortgage debt since a fraudulent release is voidable and may be set aside.
 
 See Butler County v. Brocker,
 
 455 Pa. 343, 314 A.2d 265 (1974); 12 Pa.C.S. § 5107. Appellants are not liable on the surety agreement to either appellees or Homeowners. Homeowners’s remedy for liability for the mortgage debt lies against their title insurance companies for failing to detect a forged release.
 

 Judgment in favor of appellees against Homeowners and Spanos is affirmed. Denial of judgment in favor of appellants against Spanos is affirmed. Judgment against appellants in favor of appellees and Homeowners is vacated. Jurisdiction relinquished.
 

 TAMILIA, J., concurs in the result.
 

 [1]
 

 . We note that separate appeals from separate judgments in the same case is proper.
 
 See
 
 Pa.R.A.P. 512 (separate parties may appeal separately from the same order);
 
 General Electric Credit Corp. v. Aetna Casualty and Surety Co.,
 
 437 Pa. 463, 263 A.2d 448 (1970) (taking of one appeal from several judgments is not acceptable practice and is discouraged).
 

 [2]
 

 . Apparently, Surrick wished to avoid any appearance of ethical impropriety resulting from a lawyer engaging in business transactions with his clients.
 

 [3]
 

 . The guarantee signed by both Robert and Jean Surrick reads as follows:
 

 IN CONSIDERATION OF the agreement by CHARLES L. LEE-DOM and VARREL L. LEEDOM, husband and wife, to permit the assignment by the undersigned to HAVERFORD 2 ASSOCIATES of a certain contract for the stile ' by Leedoms to the undersigned of property located in Upper Providence Township, Delaware County, Pennsylvania, the undersigned do jointly and severally guarantee the performance of that certain mortgage dated October 10, 1978, given by HAVERFORD 2 ASSOCIATES to CHARLES L. LEEDOM and payment of the underlying mortgage debt.
 

 [4]
 

 . Most, but not all, of the homeowners joined in this appeal.
 

 [5]
 

 . We note that 8 P.S. § 1 modified the distinction at common law between a surety, who became immediately liable upon default, and a guarantor, who did not become liable until efforts to collect from the defaulting principal proved unavailing. It provides that all agreements to answer for the debt of another will be regarded as a suretyship, unless the agreement shall contain words in substance stating that "this is not intended to be a contract of suretyship."
 

 [6]
 

 . In 1982, the statute of limitations was amended to provide a limitation of four years on all contract actions, whether the contract was oral or in writing, so long as it was not under seal. 42 Pa.C.S. § 5525(8) (Supp.1982).
 

 [7]
 

 . Even where a demand is necessary to begin the running of the statute of limitation, the demand must be made within a reasonable time.
 
 See: Bell v. Brady,
 
 346 Pa. 666, 670, 31 A.2d 547, 549 (1943);
 
 Gurenlian v. Gurenlian,
 
 407 Pa.Super. 102, 113 n. 2, 595 A.2d 145, 150 n. 2 (1991); 51 Am.Jur.2d,
 
 Limitation of Actions,
 
 § 68. In this case, the creditor waited almost eight years before making a demand on the surety. This clearly is an unreasonable time.