J-S55037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PNC BANK, N.A., CUSTODIAN FOR THE PETER J. FEDORKO, JR., INDIVIDUAL RETIREMENT ACCOUNT | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 501 WDA 2020 |
| ANDREA LEHR | : | |

Appeal from the Order Entered March 19, 2020
In the Court of Common Pleas of Erie County Civil Division at No(s):
10592-2017

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: MARCH 22, 2021**

Appellant, PNC Bank, N.A., custodian for the Peter J. Fedorko, Jr., individual retirement account, appeals from the order of March 19, 2020, granting the motion for summary judgment of Appellee, Andrea Lehr, dismissing Appellant's case with prejudice, and denying Appellant's motion for summary judgment.  We affirm.

In its opinions, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  **See** Trial Court Opinion, dated March 19, 2020, at 1-2; Trial Court Opinion, dated June 16, 2020, at 1-4. Therefore, we have no reason to restate them at length here.

_____

* Retired Senior Judge assigned to the Superior Court.

For the convenience of the reader, we briefly note that, on March 9, 2007, Appellant and Knoxville Restaurant Ventures, LLC ("KRV"), entered into a three-year commercial lease agreement for property located in Knoxville, Tennessee. Trial Court Opinion, dated March 19, 2020, at 1; Trial Court Opinion, dated June 16, 2020, at 1. Appellee and her spouse, Lance L. Lehr, executed a lease guaranty in favor of Appellant for any and all liabilities due under the lease agreement. Trial Court Opinion, dated March 19, 2020, at 1; Trial Court Opinion, dated June 16, 2020, at 1. Mr. Lehr was a member of KRV; Appellee was not. Exhibit A.

> Without a written signed modification agreement and without consent and notice to [Appellee], [Appellant] orally agreed to work with KRV so that KRV could remain a tenant of the building and property [after KRV began bankruptcy proceedings]. KRV began making payments past due on the rent and real estate taxes. . . . [Appellant] filed a Complaint against only [Appellee] and sought to recover damages in the amount of $2,317,681.60 against only [Appellee].

Trial Court Opinion, dated March 19, 2020, at 2.

Both parties filed for summary judgment, and, on March 19, 2020, the trial court found in favor of Appellee and against Appellant. On April 17, 2020, Appellant filed this timely appeal.[1]

Appellant presents the following issue for our review:

---

[1] Appellant filed its statement of errors complained of on appeal on May 13, 2020. The trial court had included an opinion with the order of March 19, 2020. It entered a second opinion, pursuant to Pa.R.A.P. 1925(a), on June 16, 2020.

> Did the trial court commit an error of fact and/or law by granting [Appellee]'s motion for summary judgment and dismissing [Appellant]'s case, with prejudice?

Appellant's Brief at vii (unnecessary capitalization omitted).

Appellant contends that "the trial court erred by granting Appellee's motion for summary judgment and by dismissing [Appellant]'s case with prejudice." *Id.* at 7 (unnecessary capitalization omitted). Appellee answers that she was "completely discharged" from the lease guaranty, "because there were material modifications to the terms of the lease agreement without her consent." Appellee's Brief at 12.

Entry of summary judgment is governed by Rule 1035.2 of the Rules of Civil Procedure:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
>> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>>
>> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. In addition:

> Our standard of review of an appeal from an order granting summary judgment is well settled: Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and also demonstrates that the moving party is entitled

> to judgment as a matter of law. Whether there is a genuine issue of material fact is a question of law, and therefore our standard of review is *de novo* and our scope of review is plenary. When reviewing a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party.

*Newell v. Montana West, Inc.*, 154 A.3d 819, 821–22 (Pa. Super. 2017) (citations and internal quotation marks omitted).

*Reason v. Kathryn's Korner Thrift Shop*, 169 A.3d 96, 100 (Pa. Super. 2017).

> Furthermore, Pennsylvania courts have consistently differentiated between gratuitous (uncompensated) sureties and sureties who are compensated:

>> While we have held that in cases of corporate sureties the bond is to be strictly construed in favor of the obligee, we have also held that, when obligations of suretyship or indemnity are assumed by individuals without pecuniary compensation, their obligations are not to be extended by implication or construction. Their liability is strictissimi juris.[2]

> *Barratt v. Greenfield*, 137 Pa.Super. 310, 9 A.2d 188, 189 (1939).

>> [2] "[T]o be interpreted in the strictest manner." Black's Law Dictionary 1435 (7th ed.1999).

*J.F. Walker Co. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1274 (Pa. Super. 2002). "Where, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a gratuitous (uncompensated) surety is completely discharged." *Id.* (citation omitted). *See also Magazine Digest Publishing Co. v. Shade*, 199 A. 190, 192 (Pa. 1938) ("A gratuitous or accommodation guarantor is discharged by any change, material or not, and, even if he sustains no injury by the change, or

- 4 -

if it be for his benefit, he has a right to stand upon the very terms of his obligation and is bound no further.").

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Stephanie Domitrovich, we conclude that Appellant's issue merits no relief. The trial court opinions comprehensively discuss and properly dispose of that question. *See* Trial Court Opinion, dated March 19, 2020, at 5; Trial Court Opinion, dated June 16, 2020, at 8-15 (trial court did not err by finding Appellee was a gratuitous surety who was discharged from liability under the lease guaranty after Appellant and KRV materially modified the lease agreement by increasing the rent payments and extending the lease term thereby substantially increasing her risk without her consent).

Accordingly, the trial court properly entered summary judgment in favor of Appellee, and we affirm on the basis of the trial court's opinions. The parties are instructed to attach the opinions of the trial court in any filings referencing this Court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/22/2021

PNC BANK, N.A., CUSTODIAN FOR THE
PETER J. FEDORKO, JR., INDIVIDUAL
RETIREMENT ACCOUNT
       Plaintiff

   v.

ANDREA LEHR
     Defendant

: IN THE COURT OF COMMON PLEAS
: OF ERIE COUNTY, PENNSYLVANIA
: CIVIL DIVISION
:
:
:
:
: NO. 10592-2017
:
:
:

Appearances:    John C. Melaragno, Esq., on behalf of Plaintiff
         Kurt L. Sundberg, Esq. on behalf of Defendant

## OPINION AND ORDER

Domitrovich, J., March 19, 2020

     Procedurally, this matter was argued before this Trial Court regarding two summary judgment motions: Plaintiff's Motion for Summary Judgment filed by John C. Melaragno, Esq. on behalf of Plaintiff PNC Bank, N.A., and Defendant's Motion for Summary Judgment filed by Kurt L. Sundberg, Esq. on behalf of Defendant Andrea Lehr. Plaintiff in this case is PNC Bank, N.A. [hereinafter Plaintiff] acting as custodian for the Peter J. Fedorko, Jr., Individual Retirement Account. Defendant is Andrea Lehr [hereinafter Defendant].

     A commercial lease agreement for a three year term was entered into on March 9, 2007, between Plaintiff and Knoxville Restaurant Ventures, LLC  [hereinafter KRV] in Knoxville, Tennessee. Defendant and her spouse Lance L. Lehr executed a Lease Guaranty in favor of Plaintiff for any and all liabilities due under the lease agreement. Defendant was neither a member nor an owner of KRV; Defendant was never involved in the operations of KRV at said property. Defendant never visited the leased property in Knoxville, Tennessee. However, Defendant's husband, Lance L. Lehr is a member and one of the owners of KRV.

KRV made rental payments on the leased property to Plaintiff beginning April of 2007; however, KRV began bankruptcy proceedings in Bankruptcy Court in December 2007, and operated as a debtor-in-possession under Chapter 11 of the Bankruptcy Code from December 2007 until January 19, 2010. On February 21, 2014, Lance L. Lehr filed Chapter 13 Bankruptcy, which was converted to Chapter 7 Bankruptcy on May 19, 2014 with a discharge being entered on November 12, 2014.

Defendant was never a party to KRV's Chapter 11 bankruptcy proceedings nor involved in her husband's subsequent Chapter 7 bankruptcy proceedings. Both counsel, Attorney Melaragno and Attorney Sundberg, agree that the written lease expired on March 9, 2010.

Without a written signed modification agreement and without consent and notice to Defendant, Plaintiff orally agreed to work with KRV so that KRV could remain a tenant of the building and property. KRV began making payments past due on the rent and real estate taxes. Emails from Plaintiff's Counsel and Peter J. Fedorko [hereinafter Fedorko] indicate Plaintiff sought rental and tax payment increases and modifications. The last date of occupancy by the entity known as KRV was December 31, 2013. On June 26, 2017, Plaintiff filed a Complaint against only the Defendant and sought to recover damages in the amount of $2,317,681.60 against only the Defendant.

The standard of review: Pennsylvania Rule of Civil Procedure 1035.2 states that after the relevant pleadings are closed, but within such time as not to delay unreasonably the trial, any party may move for summary judgment in whole or in part as a matter of law: (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of

action or defense which in a jury trial would require the issues to be submitted to the jury. *See* Pa. R. Civ. P. 1035.2.

Summary Judgment is appropriate in cases where the record demonstrates no genuine issue of material fact exists and the party moving for summary judgment is entitled to judgment as a matter of law. *Truax v. Roulhac*, 126 A.3d 991, 996 (Pa.Super. 2015). The party moving for summary judgment bears the burden to prove no genuine issue of material fact exists. *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 159 (Pa. 2009). A trial court must consider all facts in the record and reasonable inferences therefrom in a light most favorable to the non-moving party. *Truax* at 996. "In doing so, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Truax* at 996 (*citing Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 (2007)). A grant of summary judgment is appropriate "'where the right to such judgment is clear and free from all doubt.'" *Truax* at 996 (*citing Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 (2007)).

Two issues are before this Trial Court:

1. Whether Defendant is an uncompensated surety and if so, whether Defendant as an uncompensated surety under the Guaranty Agreement is liable for material modifications of the underlying lease or contract made by the creditor and debtor without the Defendant surety's consent?

2. Whether the statute of limitations applies barring Plaintiff's cause of action against Defendant?

**Relevant case law:** A suretyship agreement is present when a third party agrees to provide additional credit to a debtor for repayment of the debt by agreeing to undertake the debtor's obligation to the creditor if the debtor fails to perform. *Continental Bank v. Axler*, 510 A.2d 726, 729 (Pa.Super. 1986). Generally, a suretyship represents a three-party agreement where a creditor is

entitled to performance of a contract or contractual duty by the original debtor or the debtor's surety in instances where the debtor defaults. *Id.*

The two types of suretyships are gratuitous (uncompensated) sureties and compensated sureties. Pennsylvania courts have consistently differentiated between these two types of sureties. The Pennsylvania Superior court defines gratuitous (uncompensated) sureties as: "...when obligations of suretyship or indemnity are assumed by individuals without pecuniary compensation, their obligations are not to be extended by implication or construction. Their liability is *strictissimi juris*." *Barratt v. Greenfield*, 9 A.2d 188, 189 (Pa.Super. 1939). Gratuitous sureties are those sureties not receiving any pecuniary compensation whereas compensated guarantors are sureties by virtue of their status as officers and owners of the corporation when making the guarantee. *McIntyre Square Associates v. Evans* 827 A.2d 446, 452 n.8 (Pa.Super. 2003). In the instant case, Defendant was neither a member nor an owner of KRV; Defendant was never involved in the operations of KRV at said property nor ever visited the leased property in Knoxville, Tennessee. Therefore, this Trial Court concludes as a matter of law that Defendant never received any direct pecuniary compensation for being a surety, Defendant is a gratuitous uncompensated surety whereas Lance L. Lehr is a compensated surety.

Case law indicates a creditor and debtor may renegotiate the terms of the agreement and the debtor's obligation without obtaining the assent of the surety to this new changed obligation. *Axler* at 729. However, where the surety does not consent, the surety has no duty under a renegotiated obligation of the original debtor for new obligations renegotiated by the creditor and debtor. *Id.* Where a creditor and debtor "materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability may be affected." *Id.* A material modification in the relationship of the creditor and debtor is "a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original

Page 4 of 6

agreement on which the surety accepted liability." *Id*. Moreover, the Pennsylvania Supreme Court holds gratuitous uncompensated guarantors are discharged from liability under a surety contract by any change, material or not in the underlying contract. *Magazine Digest Pub. Co. v. Shade*, 199 A. 190, 192 (1938).

Plaintiff orally agreed to accept payments from KRV for rental and tax payment increases and other modifications. Upon making oral modifications to the Lease Agreement, Plaintiff and KRV never entered into a new written lease regarding these modifications after expiration of the written three year agreement on March 9, 2010. Plaintiff never contacted Defendant and never sought Defendant's consent on modifications for increased rental and tax payments. Therefore, Defendant as a gratuitous uncompensated guarantor has no liability under this surety contract since Plaintiff and KRV made changes, material or not, in the underlying contract.

Since Defendant as a gratuitous uncompensated guarantor has no liability under this surety contract, the second issue regarding the statute of limitations is rendered moot. Therefore, consistent with the foregoing Opinion, this Trial Court enters the following Order of Court:

| PNC BANK, N.A., CUSTODIAN FOR THE PETER J. FEDORKO, JR., INDIVIDUAL RETIREMENT ACCOUNT<br>Plaintiff/Appellant<br><br>v.<br><br>ANDREA LEHR<br>Defendant/Appellee | : IN THE COURT OF COMMON PLEAS<br>: OF ERIE COUNTY, PENNSYLVANIA<br>: CIVIL DIVISION<br>:<br>:<br>:<br>:<br>: NO. 10592-2017<br>:<br>: 501 WDA 2020 |
| --- | --- |

Appearances:     John C. Melaragno, Esq., on behalf of Appellant PNC Bank
                 Kurt L. Sundberg, Esq. on behalf of Appellee Andrea Lehr

## 1925(a) OPINION

Domitrovich, J., June 15, 2020

This Trial Court denied Appellant's [PNC Bank, N.A.'s] Motion for Summary Judgment and granted Appellee's [Ms. Andrea Lehr's] Motion for Summary Judgment. On appeal, Appellant sets forth five (5) paragraphs in Appellant's 1925(b) Statement of Matters Complained of on Appeal, which this Trial Court has combined into a single issue: whether this Trial Court erred by denying Appellant's Motion for Summary Judgement and granting Appellee's Motion for Summary Judgment, where Appellee was a "gratuitous guarantor" who was discharged from her liability under a Lease Guaranty when Appellee was not provided notice and did not give her consent to material modifications that substantially increased her risk made to the three year Commercial Lease Agreement.

The facts of this case are as follows: On March 9, 2007, Appellant and Knoxville Restaurant Ventures, LLC [hereinafter KRV, LLC], entered into a three-year Commercial Lease Agreement [hereinafter Lease Agreement] for property located in Knoxville, Tennessee. KRV, LLC signed the lease to operate a "Quaker Steak and Lube" restaurant at the location. Also on March 9, 2007, Appellee and her spouse, Lance L. Lehr, an owner of KRV, LLC, executed a Lease Guaranty in favor of Appellant for any and all liability under this Lease Agreement. Appellee is the wife of Lance L.

Page 1 of 15

Lehr but is not associated with his business dealings in any way. Appellee was not a party to the Lease Agreement. Appellee was neither a member nor an owner of KRV, LLC, and she was never involved in any of KRV, LLC's operations. Appellee never visited the property in Knoxville, Tennessee.

The relevant terms of the Lease Agreement are clear and unambiguous. The Lease Agreement provided for a strict three-year term:

> 2.      The Leased Property is leased to Lessee subject to all the terms, covenants and conditions contained herein for a term of three (3) years commencing on March 9, 2007 (hereinafter "Commencement Date") and through March 9, 2010, the Lease to be fully complete and ended at the expiration of the period without notice.

See Plaintiff's Motion for Summary Judgment, Exhibit C, "TERM" (emphasis added). The Lease Agreement provided for a strict rental payment schedule:

|        | **ANNUAL**   | **MONTHLY** |
|--------|--------------|-------------|
| Year 1 | $150,000.00  | $12,500.00  |
| Year 2 | $154,500.00  | $12,875.00  |
| Year 3 | $159,135.00  | $13,261.25  |

### ADDITIONAL PAYMENT

| Year 3 | $66,306.24 | $5,525.52 |
|--------|------------|-----------|

See Plaintiff's Motion for Summary Judgment, Exhibit C, "RENT". The Lease Agreement also explicitly precluded any potential renewal or extension of the lease:

> 3.      **There are no renewal or extension options under the terms of this Lease.** Unless the Lessee has exercised its Option to Purchase as set forth in this Lease, any occupancy or use of the Leased Property subsequent to the 3 year Term shall be at the sole discretion of the Lessor and on such terms and conditions as are acceptable to Lessor.

See Plaintiff's Motion for Summary Judgment, Exhibit B, "REWNEWAL OPTIONS" (emphasis added). The Lease Agreement's express and unambiguous terms set forth Appellee's obligation, secured under the Lease Guaranty, to a three-year Lease Agreement with a certain payment schedule that terminated without the possibility of renewal or extension unless KRV, LLC purchased the

property. Contrary to the firm obligations as stated in the Lease Agreement between KRV, LLC and Appellant, both parties' performance during KRV, LLC's tenancy belied any intent of Appellant and KRV, LLC to follow the Lease Agreement. KRV, LLC consistently failed to perform under the Lease Agreement, and Appellant consistently allowed KRV, LLC to remain as a tenant. Now, Appellant seeks to hold Appellee liable not just under the Lease Agreement Appellant and KRV, LLC did not adhere to themselves but to hold Appellee responsible for the material modifications Appellant and KRV, LLC made to the Lease Agreement without her consent.

KRV, LLC began making the scheduled rental payments in April of 2007 but missed its first payment by December of the same year. KRV, LLC simultaneously initiated bankruptcy court proceedings in December of 2007, becoming a Chapter 11 debtor-in-possession until December of 2009, when KRV, LLC filed a Motion to Dismiss this bankruptcy case. On January 19, 2010, KRV, LLC's case was dismissed by the U.S. Bankruptcy Court for the Western District of Pennsylvania. On February 21, 2014, Lance L. Lehr filed Chapter 13 Bankruptcy, which was subsequently converted to Chapter 7 Bankruptcy on May 19, 2014, and a Bankruptcy Court discharge was entered on November 12, 2014. Appellee was never a party to KRV's Chapter 11 bankruptcy proceedings nor was she involved in her spouse's subsequent Chapter 7 bankruptcy proceedings.

Despite KRV, LLC's financial troubles, Appellant and KRV, LLC continued to maintain their ongoing business relationship. KRV, LLC made payments on the property from January 2008 to September 2008, albeit in amounts that deviated from the Lease Agreement, after which time the Appellant and KRV, LLC began to exchange emails that described material modifications to the Lease Agreement. Both Appellant and KRV, LLC agreed the Bankruptcy Court had rejected the lease and structured a new weekly payment schedule, beginning in October of 2008. And while KRV, LLC

fell short of its obligations here, making low and inconsistent payments, Appellant continued to allow KRV, LLC to occupy the property. [1]

On March 27, 2009, however, Appellant sought rental payment increases from KRV, LLC: "the winter months are over and it is time for a rental increase...In the meantime, advice [sic] what the rent increase will be commencing in April so that the IRA can decide how it wishes to proceed." See Fedorko Depo., Exhibit 14. While KRV, LLC was making these 2009 payments, Appellant discovered KRV, LLC had not been paying the required taxes on the property, and Appellant again modified the payment terms to allow KRV, LLC to focus on paying the property taxes. All the while, Appellant and KRV, LLC continued to meet and discuss extending the lease term and reasonable rental payments for such extension, as shown by emails between Appellant and KRV, LLC. See Fedorko Dep., Exhibits 16, 17, & 18. This ongoing negotiation was also demonstrated by Appellant allowing KRV, LLC to remain Appellant's tenant until December 31, 2013 without Appellant ever filing a notice of default or suggesting a new lease was required.

All of the negotiations between Appellant and KRV, LLC regarding rental payments and the extension of the Lease Agreement occurred unbeknownst to Appellee. Appellee was never informed of any of these new items and never gave her consent or approval to any of these new items. And while Appellant and KRV, LLC parted ways in December of 2013, it was not until June 26, 2017 that Appellant filed a Complaint against Appellee to recover $2,317,681.60 in damages, covering KRV, LLC's tenancy from April of 2007 to December of 2013.

---

[1] As this factual pattern demonstrates, Appellant was aware of KRV, LLC's material defaults of the Lease Agreement beginning in December of 2007. KRV, LLC consistently did not meet its rental payment obligations under the Lease Agreement. This is discussed further in footnote 3, infra., which addresses the applicable statute of limitations.

1. **This Trial Court did not err by granting Appellee's Motion for Summary Judgment and Denying Appellant's Motion for Summary Judgment.**

   a. **Summary Judgment**

   The legal standard for granting a Motion for Summary Judgment in Pennsylvania is as follows. Rule 1035.2 of the Pennsylvania Rules of Civil Procedure states in relevant part: "...any party may move for summary judgment...as a matter of law: (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury."

   A grant of summary judgment is appropriate "where the right to such judgment is clear and free from all doubt." *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 (2007)). Summary judgment may be granted when [pleadings, depositions, interrogatories, etc.] show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Coleman v. Coleman*, 663 A.2d 741 (Pa. Super. 1995). Where the non-moving party bears the burden of proof on an issue, they may not merely rely on their pleadings or answers to survive summary judgment. *Thompson v. Ginkel*, 95 A.3d 900, 904 (Pa. Super. 2014) (quoting *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-62 (Pa. Super. 2013)). To defeat a summary judgment motion, the adverse party must come forth with evidence showing the existence of the facts essential to the cause of action or defense. *See* Pa.R.Civ.P. 1035.2, Note.

   b. **Suretyship Agreements**

   Relevant case law on suretyship agreements is summarized as follows. A suretyship agreement is present when a third party agrees to provide additional credit to a debtor for repayment of the debt by agreeing to undertake the debtor's obligation to the creditor if the debtor fails to

perform. *See Continental Bank v. Axler*, 510 A.2d 726, 729 (Pa. Super. 1986). Generally, a suretyship agreement represents a three-party arrangement where a creditor is entitled to performance of a contract or contractual duty by the original debtor or the debtor's surety in instances where the debtor defaults. *Id.*

A surety agreement is a contract and the language of the surety agreement determines the surety's rights and liabilities. *Beckwith Machinery Co. v. National Union Fire Ins. Co. of Pittsburgh*, 809 A.2d 403, 406 (Pa.Super. 2005). Under Pennsylvania law, sureties are divided into two classes: gratuitous sureties and compensated sureties. Pennsylvania courts distinguish between a gratuitous and compensated surety based on whether said surety received any pecuniary benefit from their status as surety. *McIntyre Square Associates* 827 A.2d at 452 n.8. For example, in the case of *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, the Pennsylvania Superior Court held the sole shareholder in a corporation was a compensated surety where the shareholder's guarantee secured a line of credit to his corporation, despite not receiving direct compensation for the guaranty. 792 A.2d 1269, 1272 (Pa. Super. 2002). Pennsylvania courts protect gratuitous sureties from having their obligations extended by implication or by construction. *Id.* (citing *Barratt v. Greenfield*, 9 A.2d 188, 189 (Pa. Super. 1939). Their liability is "*strictissimi juris.*" *Id.*

A surety may be discharged from liability depending on both modifications to the underlying agreement being secured and on whether the surety is compensated or gratuitous. Our Supreme Court has explained: "...Pennsylvania courts have uniformly recognized that where the creditor and the debtor materially modify the terms of their relationship without obtaining the surety's assent thereto, the surety's liability may be affected. **Where, without the surety's consent, there has been a material modification in the creditor-debtor relationship, a gratuitous (uncompensated) surety is completely discharged.**" *McIntyre Square Assoc. v. Evans*, 827 A.2d 446, 452 (Pa. Super. 2003) (quoting *Reliance Ins. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999)) (emphasis added). The

presence of a material modification in the creditor-debtor relationship is sufficient to discharge a gratuitous surety from their obligation if it is made without the surety's consent.

"A material modification in the creditor-debtor relationship consists of a significant change in the principal debtor's obligation to the creditor that in essence substitutes an agreement substantially different from the original agreement on which the surety accepted liability." *J.F. Walker Co., Inc.,* 792 A.2d at 1274 (citing *Continental Bank,* 510 A.2d at 729; Restatement (First) of Security § 128, cmt. d). Material modifications occur when the principal debtor and creditor insert new obligations into an agreement or replace current obligations with new obligations. *See* Restatement (First) of Security § 128, cmt. d, Illustrations. For example, altering the specifications and timetable in a construction contract for the building of a home or extending a lease and increasing the rent are both considered material modifications to the principal debtor-creditor relationship. *Id.* This was the case in *McIntyre Square Assoc.* 827 A.2d 446, where the Pennsylvania Superior Court held the doubling of the lease term and the significant increase in the rent were not only material modifications, but material modifications that substantially increased the surety's risk. *Id.* at 452.

Moreover, Pennsylvania law discharges gratuitous sureties from liability following any alteration, material or not, to the underlying agreement between the parties: "**[a] gratuitous or accommodation guarantor is discharged by any change, material or not,** and, even if he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation and is bound no further." *Magazine Digest Pub. Co. v. Shade,* 199 A. 190, 192 (Pa. 1938) (emphasis added).

While material modifications made without the surety's consent will discharge a gratuitous surety from liability under an agreement, a surety can give prior consent to such material modifications in the surety agreement itself. "...[M]aterial modifications in the creditor-debtor relationship will not serve to discharge the surety where the surety has given prior consent to such

material modifications as part of the suretyship contract." *Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999). "In determining whether a surety has consented to a material modification, the suretyship 'contract must be given effect according to its own expressed intention as gathered from all the words and clauses used, taken as a whole, due regard being had also to the surrounding circumstances.'" *Id.* (quoting *Continental Bank*, 510 A.2d at 730). The suretyship agreement must be interpreted, in light of the surrounding circumstances of the agreement, to determine whether a party consented to the material modification in question.

Furthermore, to determine a party gave prior consent to a material modification that substantially increased the surety's risk, **the suretyship agreement must contain express and specific language indicating the surety gave prior consent to such a material modification.** *Reliance Ins. Co.*, 734 A.2d at 838-39 (emphasis added). Otherwise, the Trial Court must discharge the surety from the surety's liability if the material modifications substantially increase the surety's risk.

    c. **This Trial Court did not err by finding Appellee was a gratuitous surety who was discharged from liability under the Lease Guaranty after Appellant and KRV, LLC materially modified the Lease Agreement by increasing the rent payments and extending the lease term thereby substantially increasing her risk without her consent.**

This Trial Court found that Appellee, as a gratuitous surety, was discharged from her liability under the Lease Guaranty after Appellant and KRV, LLC materially modified the Lease Agreement by increasing the rent payments and by extending the lease term. Furthermore, this Trial Court found the modifications made by Appellant and KRV, LLC to the rent payments and lease term were material modifications that substantially increased Appellee's risk. This Trial Court, after examining the Lease Guaranty, giving due regard to the surrounding circumstances of the transaction, and finding the Lease Guaranty did not include express or specific language contemplating waiver of material modifications that substantially increased Appellee's risk, found Appellee did not give prior consent to material modifications of the Lease Agreement that substantially increased Appellee's risk.

Appellee was a gratuitous surety. Appellee was not compensated in any recognized manner for her guaranty of the Lease Agreement. She was not directly compensated for her guaranty, nor did she have any ownership interest in KRV, LLC. Appellee was not involved in KRV, LLC's management of the property; in fact, she never visited the property located in Knoxville, Tennessee. Appellant alleges Appellee is a compensated surety solely through here status as Lance L. Lehr's spouse.[2] Extending Appellee's obligations under the Lease Guaranty by such implied compensation, however, is improper. No such "compensation via marriage" doctrine exists in Pennsylvania law. Therefore, this Trial Court concluded, as a matter of law, Appellee was a gratuitous surety, and the issue then became whether Appellee gave her consent to modifications made to the Lease Agreement.

It is undisputed that Appellee was never notified of any modifications to the Lease Agreement nor did she give her consent to any modifications to the Lease Agreement. Appellee stated in her deposition she never received notice concerning any modification of the Agreement, to which Appellant's counsel agreed during this Trial Court's Hearing on Summary Judgment. (N.T.: Motion for Summary Judgment Hearing, February 25, 2020, p.25: 2-13; 14-20). It is also undisputed no modified agreement in writing was ever produced or presented to Appellee memorializing any of the modifications Appellant and KRV, LLC made to the Agreement. Given that Appellee was never notified of any discussions or negotiations between Appellant and KRV, LLC concerning the Lease Agreement, Appellee could never have given her consent to any modification made to the Lease Agreement.

---

[2] Compensated sureties are not discharged from their liability under a surety agreement as easily as gratuitous sureties. The only instance where a material modification, made without the surety's consent, will not discharge a gratuitous surety from liability is if the material modification is entirely to the surety's benefit. On the other hand, the only material modification, made without the surety's consent, that will discharge a compensated surety from liability is if the material modification substantially increases the surety's risk. *See* Restatement (First) of Security § 128. Appellant argues both sides of this distinction: that Appellee was a compensated surety compensated by her marriage to Lance Lehr; and that even if she was a gratuitous surety, the modifications were entirely to the benefit of Appellee. However, this Trial Court found Appellant's arguments unconvincing. Appellee is a gratuitous surety, and even if she were a compensated surety, she would be discharged from liability as the material modifications substantially increased her risk.

The modifications KRV and Appellant made to the Lease Agreement were not only material but substantially increased Appellant's risk under the Lease Agreement as well. The terms of the Lease Agreement Appellee signed on March 9, 2007 stipulated a three-year term complete with a consistent payment schedule to conclude on March 9, 2010. *See* Appellant's Motion for Summary Judgment, Exhibit C, "TERM". This Lease Agreement did not contain any extension or renewal provisions. *Id.* at "RENEWAL OPTIONS". The Lease Agreement called for monthly payments of $12,500.00 in year 1; $12,875.00 in year 2; and $13,261.25 in year 3; for a total of $463,635 over three years. *Id.* at "EXHIBIT B". The Agreement only provided for a month-to-month holdover tenancy should KRV remain on the premises past the three-year term. *Id.* at "HOLDING OVER".

Due to the financial difficulties KRV, LLC experienced during its tenancy, however, Appellant and KRV, LLC engaged in a series of material modifications to the Lease Agreement to ensure the continued tenancy of KRV, LLC. Appellant and KRV, LLC more than doubled the initial Lease Agreement term, extending it from three to over six years, and increased the monthly rental payments. *See* Fedorko's Depo., Exhibit 14. Appellee was obligated to secure a three-year lease with rental payments to total $463,635 plus various other expenses such as property taxes. The degree to which these material modifications increased Appellee's risk is shown by Appellant's initial complaint establishing KRV, LLC's last date of tenancy was December 31, 2013, resulting in over $2 million in damages. The obligations under the initial Lease Agreement had clearly been substituted for substantially different and riskier obligations. The initial Lease Agreement was substituted for a new agreement Appellee never secured, similar to the surety in *McIntyre Square Assoc.* 827 A.2d at 452 (see *supra*). The Pennsylvania Superior Court found the surety's lease was materially modified the surety's risk increased. *Id.*

As a gratuitous surety, Appellee was entitled to give her consent to material modifications Appellant and KRV, LLC planned to make to the Lease Agreement that substantially increased her

risk. Alternatively, assuming *arguendo* Appellee was a compensated surety, she would still be discharged from her liability, as compensated sureties are discharged from all liability if material changes that substantially increase their risk are made without their consent. *See McIntyre Square Assoc.*, 827 A.2d at 452. Since she was never notified, she could not have given her consent at the time Appellant and KRV, LLC made these material modifications. Moreover, the Lease Guaranty itself, giving due regard to the surrounding circumstances of the transaction, cannot be interpreted to have granted prior consent to Appellant and KRV, LLC's material modifications that substantially increased Appellee's risk. The Lease Guaranty did not contain any provision that expressly or specifically contemplated granting material modifications that substantially increased Appellee's risk. Appellee, as a gratuitous surety, who secured an express and unambiguous three-year lease, could not have contemplated or predicted the modifications in question. A review of the relevant case law guides this Trial Court's analysis as the facts of the instant case are very similar to the facts in *Reliance Ins. Co.* and *McIntyre Square Assoc.*

In *Reliance*, the Pennsylvania Supreme Court, following the reasoning of the Superior Court in *Continental Bank*, held the party in question did not waive notice of material modifications that substantially increased the surety's risk because no express or specific language was in the agreement demonstrating the surety gave prior consent to such modifications. *Reliance Insurance Company*, 734 A.2d at 451. The surety had its risk in a payment bond agreement increased from $200,000 to $5 million, which substantially increased the surety's risk, and the bond insurer, Reliance Insurance Co., claimed the surety gave prior consent to future loans in the surety's indemnification agreement. *Id.* at 833-34. The Supreme Court disagreed: "[p]ursuant to the twelfth paragraph, [surety] waived the right to notice of an assent, assignment, change in time or manner of payment, or other change or extension in the terms of a bond approved by Reliance. **The excerpted provisions do not contain any language constituting consent to a material increase in the risk of liability to [surety] or language**

expressly waiving notice of a material modification in the risk of liability. Nor do the provisions expressly refer to a material modification of the bonding line." *Id.* at 452-53 (emphasis added).

In *Continental Bank*, the Pennsylvania Superior Court ruled the surety was still bound to the underlying agreement since their surety agreement stipulated they were bound to the liabilities of successor entities. 510 A.2d at 729-30. The surety claimed they were discharged from liability by the debtor company's sale to a third party. *Id.* Key to the Pennsylvania Superior Court's analysis, as explained by the Pennsylvania Supreme Court, is the specific language contained in the surety agreement itself: "[t]he suretyship contract signed by [sureties] **specifically provided that [sureties] had waived notice of any fact which might materially increase their risk,** that [creditor] had the right without notice to or consent of [sureties] to modify, change or supplement any indebtedness without affecting or discharging [sureties'] liabilities, **and that [sureties] would be obligated for the liabilities of any partnership, firm, corporation or other company which may be a successor to [debtor]**." *Id.*; *Reliance*, 734 A.2d at 838-39.

Finally, in *McIntyre Square Assoc.*, the Pennsylvania Superior Court held the doubling of a lease term and a significant rental increase to be material modifications that substantially increased the surety's risk. 827 A.2d at 453. The Superior Court then examined the surety agreement, specifically the "No Discharge of Guaranty" provision to determine if the surety gave prior consent to material modifications that substantially increased the surety's risk. *Id.* at 453-54. The Court held the provision's language that the liability of the Guarantor hereunder shall not be discharged notwithstanding **"any amendment or modification of the provisions of the Lease Agreement"** made without notice was not, under *Reliance*, **a grant of prior consent to material modifications that substantially increase the surety's risk.** *Id.* While the Pennsylvania Superior Court found the language "any act, thing, omission or delay to do any act or thing that may, in any manner, or to any extent, vary the risk of Guarantor..." would have been sufficient to give prior consent to material

modifications that substantially increase the surety's risk, the language contained within the same sentence "or that would otherwise operate as a discharge of any Guarantor as a matter of law…" made the language ambiguous. *Id.*

In the instant case, the Lease Guaranty does not contain any express or specific language such as "any act, thing, omission or delay to do any act or thing that may, in any manner, or to any extent, vary the risk of Guarantor…" that could be interpreted as the surety's grant of prior consent to material modifications that substantially increase the surety's risk. The instant Lease Guaranty is thus distinguishable from the agreements analyzed in *Continental Bank* and *McIntyre Assoc.*, that were found to have given or would have given, respectively, prior consent to material modifications that substantially increase the surety's risk.

The instant Lease Guaranty contains only one provision that contemplates waiver of notification. *See* Appellant's Motion for Summary Judgment, Exhibit A, "Waiver of notices." The waiver provision states: "[w]ithout notice to or further assent from the Guarantor, the Landlord may **waive or modify any of the terms or conditions of the Lease…**" (emphasis added). This term, as the agreement examined in *Reliance*, does not contain express or specific language regarding material modifications that substantially increase Appellee's risk. The Lease Guaranty also contains a discharge of liability provision; however, the provision in the instant case does not contain any language contemplating a variance in the risk of the surety based on the actions of the principal debtor-creditor.

Moreover, when you consider the circumstances surrounding the transaction between Appellee, Appellant, and KRV, LLC, it becomes even clearer Appellee had no intention of waiving her right to notification and consent to material modifications that would substantially increase her risk. Appellee is not a commercial party nor was she connected in any way to the subject of the transaction. She was not a member of KRV, LLC, and she did not benefit financially, either directly

or indirectly, in any way from the restaurant or from KRV, LLC's tenancy on the property. Appellee was a gratuitous surety who guaranteed her spouse's company's initial three-year Lease Agreement.

The instant Lease Agreement itself in the instant case denotes a strict payment schedule and states multiple times its term is for three years. This Lease Agreement did not contain an extension or renewal provision but rather expressly forbade any extension or renewal. Appellee could not have been put on notice to expect such modifications; and, of course, Appellant and KRV, LLC did not notify her of any modification or any default. Given Appellee did not have any direct connection to the business dealings of KRV, LLC, Appellant, or the restaurant itself, Appellee could not have been expected to become informed of the financial status between the Appellant and KRV, LLC. In fact, Appellant never communicated with Appellee in any manner and continuously granted KRV, LLC the opportunity to remain on the premises instead of claiming default. Appellant is now suing Appellee over four years after KRV, LLC last occupied the property and approximately ten years after KRV, LLC missed its first rental payment. Appellant's behavior clearly indicates Appellant did not consider Appellee as having given prior consent to the material modifications that Appellant and KRV, LLC made to the Lease Agreement.

After reviewing the instant Lease Guaranty, giving due regard to the surrounding circumstances of the transaction, this Trial Court found Appellee did not give prior consent to material modifications of the Agreement that substantially increased Appellee's risk. Appellant was required to obtain Appellee's consent to any material modifications that substantially increased her risk before Appellant and KRV, LLC made the material modifications in order to maintain Appellee's liability under the Lease Guaranty. Since Appellant failed to obtain her consent and since the extension of the lease term and the increase in rental payments were material modifications that substantially increased her risk, Appellee was discharged of her liability under the Lease Guaranty. Moreover, Appellee was discharged whether the modifications were material or not, as Pennsylvania law still holds gratuitous

guarantors are discharged from liability following any modification to the Lease Agreement, as gratuitous guarantors have the right to stand on the terms to which they initially agreed.

For all of the above reasons, this Trial Court granted Appellee's motion for Summary Judgment and denied Appellant's Motion for Summary Judgment. This Trial Court also found the issue of the statute of limitations to be moot after finding Appellee was discharged of any liability under the lease guaranty. [3] Therefore, this Trial Court respectfully requests the Pennsylvania Superior Court affirm this Trial Court's Order dated March 19, 2020, denying Appellant's Motion for Summary Judgment and granting Appellee's Motion for Summary Judgment, thereby dismissing Appellant's civil action with prejudice.

BY THE COURT,

Stephanie Domitrovich, Judge

cc: John C. Melaragno, Esq., 502 West 7th Street, Erie, PA 16502
Kurt L. Sundberg, Esq., 300 State Street, Suite 300, Erie, PA 16507

---

[3] This Trial Court notes the statute of limitations would have barred Appellant's cause of action. The Superior Court stated in *Leedom v. Spano*, 647 A.2d 221, 224-29 (Pa. Super. 1994), "[i]t is a fundamental principle of surety law that upon default by the principal, both principal and surety thereupon become liable on the original undertaking...Thus, the creditor's cause of action against the surety accrues upon material default by the debtor." In the instant case, as demonstrated in the facts listed above, Appellant was well aware of KRV, LLC's material defaults under the Lease Agreement beginning in December of 2007. Rather than declare KRV, LLC in default, Appellant began a series of material modifications to the Lease Agreement to allow KRV, LLC to remain in the property. And even assuming *arguendo* Appellee is liable for KRV, LLC's material defaults for the Lease Agreement's full three-year term – that term ended on April 9, 2010. Appellant did not declare default on KRV, LLC during this period and did not attempt to hold Appellee liable under the Lease Guaranty until it filed its cause of action on June 26, 2017, well after the expiration of the four year statute of limitations. *See* 42 Pa.C.S. § 5525(a)(8) (Surety agreement is a contract. *See Beckwith Machinery Co.*, 809 A.2d at 406 (*supra*)).