J-A12006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALUMISOURCE CORPORATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KANTNER IRON & STEEL, INC. AND | : | No. 764 WDA 2021 |
| JOHN M. TOTH | : | |

Appeal from the Order Entered June 2, 2021
In the Court of Common Pleas of Westmoreland County
Civil Division at 5664 of 2014

| | | |
|---|---|---|
| ALUMISOURCE CORPORATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KANTNER IRON & STEEL, INC. AND | : | |
| JOHN M. TOTH | : | |
| | : | No. 807 WDA 2021 |
| Appellants | : | |

Appeal from the Judgment Entered July 1, 2021
In the Court of Common Pleas of Westmoreland County
Civil Division at 5664 of 2014

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                **FILED: MAY 23, 2022**

At 764 WDA 2021, Alumisource Corporation (Appellant) appeals from

the denial of post-trial motions challenging the $300,000 verdict favor of John

---

* Retired Senior Judge assigned to the Superior Court.

M. Toth (Toth or Mr. Toth) for Appellant's breach of its consulting agreement (CA) with Toth.[1]  At 807 WDA 2021, Toth and Kantner Iron & Steel, Inc. (Kantner) (collectively, Defendants), appeal the $341,869.07 judgment entered in favor of Appellant for Defendants' breach of a right-of-first-refusal agreement (ROFRA) involving Defendants' sale of scrap aluminum to Appellant.  Toth has filed a cross-appeal at that docket number.  Upon careful review, we affirm the judgments at both dockets.

### Factual History

Appellant operates an aluminum processing facility in Monessen, Pennsylvania.  Appellant purchases scrap aluminum, and after processing and purifying the aluminum, sells the resulting shredded aluminum to aluminum product producers.  N.T., 6/22/20, at 21-23.  At all relevant times, Toth owned

---

[1] Appellant appealed from the June 3, 2021, order denying the parties' post-trial motions.  However, an appeal properly lies from judgment entered following the disposition of post-trial motions. *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 388 n.2 (Pa. Super. 2015).  Our review discloses judgment was entered against Defendants on the verdict against them for violating the ROFRA.  We have amended the caption accordingly.  Although the denial of post-trial relief on the CA verdict was not reduced to judgment as required by Pa.R.A.P. 301, in the interests of judicial economy, we "regard as done that which ought to have been done." *McCormick v. N'eastern Bank of Penna*., 561 A.2d 328, 330 n.1 (Pa. 1989); *see also Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 628-29 (Pa. Super. 1997) ("Were we to quash an appeal from an order which, except for entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the prothonotary to enter judgment, and a subsequent appeal would be permitted to follow." (citation omitted).

Kantner and EMF Development Corp. (EMF), two businesses that sell scrap metal.  N.T., 6/25/20, at 610.

During the fall of 2010, Appellant's president, Gabriel Hudock (Hudock or Mr. Hudock), sought to purchase an aluminum shredder (shredder) to meet increased demand for aluminum.  N.T., 6/22/20, at 23-32, 34-35, 63.  After receiving a quote of $1,450,000.00 for a new American Pulverizer shredder, Appellant entered into negotiations with Toth for the purchase of a used model of the same shredder.  *Id.* at 33-35.

The trial court explained:

Between April and June of 2011, Mr. Hudock and Mr. Toth negotiated for the sale of the shredder, in addition to a proposed agreement in which Mr. Toth would offer [Appellant] a right of first refusal to purchase aluminum scrap from his two scrapyards.  The initial agreed price to be paid by [Appellant] was [] 2 million dollars.

After seeking financing[, Appellant] was only able to finance 75% of the purchase price, leaving a deficit of $500,000.00 of financing; Mr. Toth offered to finance the remaining balance.  Mr. Toth and Mr. Hudock met on April 11, 2011 to discuss the agreements further; Mr. Hudock presented Mr. Toth with a draft [ROFRA], a draft Bill of Sale encompassing the two million dollar agreement, and a draft [CA].  Mr. Hudock testified to his belief that the [CA] was designed to provide the $500,000 in financing by Mr. Toth.  Mr. Hudock further testified that upon receiving the drafts and discussing them with his counsel, Mr. Toth requested a $500,000 judgment note or loan schedule in place of the consulting agreement.

Upon further negotiations with PNC Bank, PNC agreed to finance the entire two million-dollar transaction.  As the entire agreement was financed, Mr. Toth agreed to drop the purchase price to $1,900,000.00.  As negotiations continued, Mr. Toth requested a copy of the proposed ROFRA on April 14, 2011, from Tom Adamek, [Appellant's] Chief Operations Officer.  Mr. Toth

- 3 -

returned the draft to Mr. Adamek with changes made by counsel on May 5, 2011. Mr. Toth sent Mr. Hudock an email stating, "Gabe, I cleaned up the changes you wanted and took off the draft wording. I will get it signed and sent to you Thursday. Thanks, John." The revised ROFRA was attached. A further June 9, 2011, email from Mr. Toth to Mr. Hudock stated, "Gabe, the envelope will be at the office at Johnstown with originals. You or Keith can pick up. Please get me one signed copy back. Thanks, John." **Attached to that email was a copy of the ROFRA agreement, executed by Mr. Toth and witnessed.**

**Upon receiving this email, Mr. Hudock emailed Mr. Toth on June 9, 2011, as follows: "John, as you know, we agreed that the right of refusal would apply to all the yards owned by you, not just Kantner Iron Metal. I would like the agreement to reflect our intentions. Thanks, Gabe." Mr. Toth replied: "Gabe, you're getting a bit paranoid. Read paragraph 1. It gives you the right of refusal for all of John Toth's existing facilities. I can't give you any more than that. John." Mr. Hudock subsequently signed the ROFRA on June 13, 2011, witnessed by Tom Adamek, and Mr. Adamek sent him a copy of the executed ROFRA.**

Approximately one week later, Mr. Toth indicated to Mr. Hudock that he had not received the executed copy from [Appellant], and Mr. Hudock assured Mr. Toth that he would send an employee with a physical copy. Gray Gallo, an [employee of Appellant], testified that Mr. Hudock gave him an envelope to give to Mr. Toth and that he recalls doing so. Testimony from Mr. Toth indicates that he did not bring up the executed agreement again after this time, and **an email to Mr. Toth dated March 15, 2012, included a copy of the executed ROFRA.**

… [T]he ROFRA period extended for a term of thirty-six (36) months, from June 9, 2011, to June 9, 2014. [Appellant] is the identified buyer and [] Toth and Kantner are defined as "seller." **Under the ROFRA, [Appellant] is provided the right of first refusal to purchase "aluminum materials" from "any and all of Seller's existing facilities."** Specifically, Seller agrees to provide [Appellant] with any third-party bona fide offer to purchase aluminum materials, at which time [Appellant] is provided four (4) hours to accept or reject the offer.

Mr. Hudock testified that for the first two (2) years of the contract term, the parties apparently complied with the ROFRA as written, and each consummated purchase was documented in a Purchase Order. Mr. Hudock also described a summary of documents received from Defendants which showed sales records to other companies, including competitors of [Appellant,] during the period of the ROFRA. He testified that these sales were not offered to [Appellant] and [Appellant] would have been interested in these sales if they had been offered pursuant to the ROFRA.

\* \* \*

Regarding the [CA], … Mr. Hudock testified that he never requested that Mr. Toth actually become a consultant for [Appellant]. **[Mr. Hudock] testified, however, that he did sign the [CA] at Exhibit D.** He stated he believed the contract was aborted by oral agreement and/or the final agreement of sale for the shredder.

Trial Court Opinion, 1/15/21, at 2-6 (citations omitted, emphasis added). At trial, Hudock further testified that in a December 12, 2012, email, Toth offered to sell Appellant "irony" aluminum. *See* N.T., 6/22/20, at 83; Exhibit 11. According to Hudock, this was the first offer under the ROFRA from Toth to Appellant. *Id.* at 84.

## Procedural History

On November 14, 2014, Appellant filed a complaint against Defendants in Westmoreland County, Pennsylvania, alleging breach of the ROFRA (the ROFRA case). Complaint, Westmoreland County Docket No. 5664 of 2014.

On April 6, 2018, in Somerset County, Pennsylvania, Toth filed a complaint alleging breach of his consulting agreement with Appellant and for

unjust enrichment (the CA case).[2]  Complaint, Somerset County Docket No. 188 of 2018.  Appellant filed an answer and new matter demurring to Toth's complaint in the CA case, and further asserting Toth's contract action is barred by the statute of limitations.  On July 17, 2018, Appellant filed a motion for judgment on the pleadings in the CA case.  Motion, 7/17/18.  On November 9, 2018, the Somerset court granted in part and denied in part Appellant's motion.  The court concluded Toth sufficiently pled a *prima facie* cause of action for breach of the CA.  Somerset Court Opinion, 11/9/18, at 9.   The Somerset court further stated:

> [The court] find[s] the [CA] is an installment contract that contemplates periodic payments of $100,000.00 on April 15 of the years 2012, 2013, 2014, 2015 and 2016.[FN]  Following this, it is apparent that, applying the four-year statute of limitations for causes of action based on contracts, the payments for the years 2012 and 2013 are outside the limitations period and are time-barred.  The payments due in 2014, 2015, and 2016 are actionable *if the* [CA] *was still in effect during those times*.  It is this point [Appellant] address[es] in [its] second argument, discussed below.
>
> ───────────────────────
>
> [FN] [Appellant] dedicated much of its Reply … [to] discussing the doctrine of "continuous contracts" and how, due to the fixed date of periodic payments in the Agreement, the doctrine is inapplicable in the instant matter.  [The court] generally agree[s] with [Appellant] on this limited point.  However, from [Toth's] Brief, and from representations made at oral argument on the [motion for judgment on the pleadings, the court] believe[s] Toth's] primary argument is rather that the [CA] is an installment contract, which invokes a distinct set of principles, namely that each failure to pay an installment is a separate breach and cause

───────────────────────

[2] Toth subsequently withdrew his unjust enrichment claim.

of action, with a separate, concomitant, four-year limitations period.

> [Appellant] asserts, and [Toth] admits, that the parties did not communicate after July 2013. Answer and New Matter ¶ 32; Reply to New Matter ¶ 32. [Appellant] argues that, because all communication, and thus all possibility of service, ceased in July 2013, the contract should be treated as terminated as of that date, and the limitations period would have begun then, ending in July 2017. [Appellant's] Rely Brief [at] 5-7. …

Somerset Court Opinion, 11/9/18, at 6-7 (footnote and quoted citations in original, some citations omitted).

Applying our Supreme Court's decision in **_Crouse v. Cyclops Industries_**, 745 A.2d 606 (Pa. 2000), the Somerset court concluded:

> [T]aking [Toth's] allegation that "[he] has performed for and provided [] all required services to [Appellant]" as true, under our standard of review, and that a provision in the [CA] states that "[t]he services … may be rendered by [Toth] without any direct supervision by the Company," [the court] do[es] not find, as a matter of law, that the failure of communication between [Toth] and [Appellant] after July 2013 unequivocally terminated the contract. At the very least, discovery is warranted on the issues of [Toth's] reasonable diligence in discovering whether [Appellant] intended to pay [Toth] for his services, what services, if any, were provided, and whether communication between the parties after July 2013 was necessary or contemplated in order to keep the [CA] valid and in effect.

Somerset Court Opinion, 11/9/18, at 8 (citations omitted).

Thereafter, the CA case was transferred to the Westmoreland County Court of Common Pleas (the trial court) in accordance with Pa.R.C.P. 213.1 (Coordination of Actions in Different Counties). On October 23, 2019, the trial

court consolidated the ROFRA case and the CA case at docket number 5446 of 2014. Trial Court Order, 10/23/19.

From June 22-26, 2020, the trial court held a bench trial on the consolidated cases. Regarding the ROFRA case, the trial court determined: (1) the ROFRA constitutes an enforceable contract, *see* Trial Court Opinion, 1/15/21, at 15; (2) Toth breached the ROFRA, *see id.*; and (3) Appellant sustained damages of $224,501.07 plus prejudgment interest, *see* Trial Court Order, 1/15/21, ¶¶ 1-2. Regarding the Somerset case, the trial court entered a verdict in favor of Toth. The trial court determined: (1) Appellant's CA with Toth constituted an enforceable installment contract, *see* Trial Court Opinion, 1/15/21, at 18; (2) Appellant breached the CA, *see id.* at 20; and (3) Toth sustained damages of $300,000 plus prejudgment interest, *see id.* at 21.

Appellants filed a notice of appeal at 764 WDA 2021 (the CA case). Defendants filed a cross appeal at 807 WDA 2021. The parties have complied with Pa.R.A.P. 1925(b) at both dockets.

Preliminarily, we recognize:

> Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Allegheny Energy Supply Co., LLC, v. Wolf Run Min. Co.***, 53 A.3d 53, 60-61 (Pa. Super. 2012) (ellipses and brackets in original; citation and quotation marks omitted). "[T]he trial court acts as the factfinder in a bench trial and may believe all, part or none of the evidence presented." ***Ruthrauff, Inc. v. Ravin, Inc.***, 914 A.2d 880, 888 (Pa. Super. 2006). "Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the factfinder." ***Id.*** (citation and quotation marks omitted).

**Appellant's Appeal at 764 WDA 2021
(The CA Case)**

Appellant presents the following issues for our review:

1. Whether Toth's claim for breach of a purported [CA] is barred by the statute of limitations where Toth did not file his complaint until more than four years after [Appellant] failed to make multiple annual payments allegedly owed to Toth under the agreement, explicitly repudiated the purported agreement, and Toth severed all communication and relations with Appellant[?]

2. Whether the trial court erred in finding [Appellant] liable for failing to make annual payments allegedly due under the purported [CA] in April of 2014, 2015 and 2016, where Toth had admittedly severed all communications and relations with [Appellant] during those years, there is no evidence that Toth performed any consulting services for [Appellant] at any time, and the trial court improperly reversed the parties' respective burdens of proof by concluding that Toth had proved his breach

of contract claim because the trial court was "not convinced that Toth *did not* perform the minimum requirements" under the [CA?]

3. Whether the trial court erred in failing to find that the doctrines of waiver, estoppel and/or laches bar Toth's claim for payments ostensibly due under the [CA] in April of 2014, 2015 and 2016, where Toth had admittedly severed all communications and relations with [Appellant] and forgot about the [CA] during those years, did not assert an alleged right to payment despite [Appellant's] explicit repudiation of the [CA] in 2012 and 2013 until he filed his complaint in 2018, at which point [Appellant's] case had been pending in the trial court for 3.5 years, and Toth made no mention of the [CA], including in verified discovery responses in 2015, even though a year ostensibly remained on the term of the [CA] at the time[?]

4. Whether the trial court erred in refusing to modify its award of $397,500 in damages and interest to Toth for payments ostensibly due under the purported [CA], where such an award greatly exceeds any appropriate measure of contract damages or amount arguably supported by the evidence, unconscionably provides Toth a windfall for damages he did not actually suffer and [Appellant] has been greatly prejudiced by Toth's years of silence and delay in asserting his alleged contractual rights[?]

5. Whether the trial court erred in awarding Toth prejudgment interest as of right and in an amount greater than necessary to fully compensate Toth[?]

Appellant's Brief at 3-5 (emphasis in original).

**Issue 1**

Appellant first challenges the trial court's determination that Toth's claim is not barred by the statute of limitations. *Id.* at 21. Appellant claims it expressly repudiated the CA in 2012 "and again in 2013, and all communications and relations between the parties were entirely terminated after July of 2013." *Id.* According to Appellant, Toth's cause of action accrued

no later than August 2013; consequently, the action is barred by the four-year statute of limitations. *Id.* (citing, *inter alia*, 42 Pa.C.S.A. § 5525(a)).

Appellant further disputes the trial court's analysis of the Somerset court's decision regarding the CA case. Appellant states,

> [t]he Somerset [c]ourt did not hold that Toth's claim for payments allegedly due in 2014, 2015 and 2016 was timely. To the contrary, the Somerset [c]ourt acknowledged [Appellant] set forth a "sound" basis to conclude the [CA] was terminated as of July 2013, but was reluctant to dismiss the entire claim at the pleading stage….

*Id.* at 24. Appellant asserts it repudiated the CA by failing to tender payment in 2012 and 2013, and by Hudock's response, "I don't know what you're talking about," when Toth requested payment. *Id.* (citation omitted). Appellant posits:

> Even assuming *arguendo* that the [c]onsulting [a]greement was not effectively repudiated, the statute of limitations was triggered when Toth refused to communicate with [Appellant] after July of 2013, completely terminating the parties' relationship and with it their purported contract.

*Id.* at 27. Appellant also claims Toth did not act with due diligence. *Id.* at 27-28.

Our Supreme Court described our scope and standard of review as follows:

> Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law. Our standard of review when examining the lower court's refusal to grant a judgment n.o.v. is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Although we accord

- 11 -

deference to a trial court with regard to its factual findings, our review of its legal conclusions is *de novo*. The trial court's determination regarding the scope of the term "actual damages" under the Law constitutes a legal conclusion and issues of statutory interpretation present this Court with questions of law for which our standard of review is *de novo*, and our scope of review is plenary.

*Bailets v. Pa. Tpk. Comm'n*, 181 A.3d 324, 332 (Pa. 2018) (citations omitted).

To prove breach of contract, a plaintiff must prove that a contract existed; it was breached; and damages resulted from the breach. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009). The statute of limitations for an action asserting breach of contract is four years. *See* 42 Pa.C.S.A. § 5525(a). The limitation period is "computed from the time the cause of action accrued." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). "[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Id.*

The parties do not dispute the existence of a contract, *i.e.*, the CA. The CA provided in relevant part:

1. [Toth] shall, as more fully set forth below in this Paragraph 1, assist [Appellant] in developing aluminum market intelligence and analyses in furtherance of [Appellant's] business strategic initiatives and goals.

More specifically, [Toth] agrees to share aluminum industry related information generally available in the public domain, as well as other information, including but not limited to general pricing formulae, hedging strategies, potential supplier/customer contacts, and the like; provided however, no such information shall be provided if the release thereof would violate a non-competition or other proprietary agreement to which [Toth] is

- 12 -

bound. [Toth] will assist [Appellant] in identifying, structuring, and developing strategic data relating to the aluminum industry.

**[Toth] will be available on request,** with appropriate notice, to meet with [Appellant's] Management/professional advisors, potential customers, investors and capital sources, and strategic partners.

The services described in this Paragraph 1 may be rendered by [Toth] without any direct supervision by [Appellant] and at such time and place in such manner (whether by conference, telephone, letter or otherwise) as [Toth] and [Appellant] may reasonably determine.

*See* N.T., 6/24/20, at 393 (Defense Exhibit D (CA)) (emphasis added).

Appellant claims repudiation of the CA. Appellant's Brief at 24. The Pennsylvania Commercial Code provides:

When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may:

(1) for a commercially reasonable time await performance by the repudiating party; or

(2) resort to any remedy for breach (section 2703 or 2711), even though he has notified the repudiating party that he would await performance by the latter and has urged retraction; and

(3) in either case suspend his own performance or proceed in accordance with the provisions of this division on the right of the seller to identify goods to the contract notwithstanding breach or to salvage unfinished goods (section 2704).

13 Pa.C.S.A. § 2610.

Where a claim accrues from "anticipatory repudiation or breach," the breaching party must have expressed "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do

- 13 -

so." ***Andrews v. Cross Atlantic Capital Partners, Inc.***, 158 A.3d 123, 130 (Pa. Super. 2017) (*en banc*) (quoting **Harrison v. Cabot Oil & Gas Corp.**, 110 A.3d 178, 184 (Pa. 2015)).

At trial, Toth testified: "The [CA] calls that I be paid a hundred thousand dollars a year annually beginning on April 5, 2012, continuing to April 5, 2016." N.T., 6/24/20, at 393. Toth testified he complied with the CA:

> I did all I could for [Hudock]. He had to ask me. I wasn't required to provide anything to him. He had to let me know what he wanted.
>
> *   *   *
>
> I met him any time he called to have a meeting. And I would have met with him and had any meeting he wanted to have, go any place he wanted me to go.
>
> *   *   *
>
> … In fact, I started to send him pricing formula [*sic*] from metal conversions, and I sent it a couple times. Then he told me in a phone conversation, you know, it's nice you're sending that, but I already get that, I really don't need that. So I stopped sending it.

***Id.*** at 548-49. Toth attempted to advise Appellant regarding procedures and practices for as-is and recovery basis purchases: "I did. I attempted to. Sometimes they just didn't want to listen to you." ***Id.*** at 550. Toth confirmed he made himself available throughout the entire consulting period. ***Id.***

Toth testified he requested payment on the CA after the first year of the ROFRA:

> [Hudock] simply said, I don't know what you're talking about. And I said, Gabe, you know what I'm talking about, I'm talking about

- 14 -

>the [CA] we signed last year. … He acted like he didn't know what I was talking about.

*Id.* When Hudock requested a copy of the agreement, Toth could not find his copy. *Id.* at 551. Toth testified he asked for payment the second year, and periodically mentioned the agreement to Hudock. *Id.* Hudock would respond, "Show me what you're talking about, I don't know what you're talking about." *Id.*

Toth indicated he consulted with Appellant's employee, Keith Miller (Miller), regarding "[s]hredder disassembly, shredder installation, shredder this, shredder that. [Miller] must have had some kind of work involved with putting a shredder in. I really don't know what his job was." *Id.* at 432. According to Toth, following the sale of the shredder to Appellant, he received telephone calls from Appellant's employee, Gary Gallo (Gallo): "[Gallo] was calling for consulting in place on matter of the shredder, how to put the shredder in." *Id.* at 485. Toth also stated he had "consulting calls" with Hudock. *Id.*

Our review discloses no statement or action by Appellant or Toth repudiating the CA. Hudock's nonpayment and response, "I don't know what you're talking about," *see id.* at 550, falls short of an "absolute and unequivocal" refusal to perform, or a distinct and positive statement of an inability to do so. *Andrews*, 158 A.3d at 130. Further, we cannot conclude Toth's cause of action accrued in July 2013, when the parties' communications

- 15 -

ceased. Toth confirmed he made himself available throughout the consulting period. N.T., 6/24/20, at 550. The trial court explained:

> While the relationship of the parties certainly deteriorated, [Appellant] presented no affirmative evidence to show an unequivocal repudiation of the [CA], and so it cannot meet its burden of showing the same in a way which would begin the tolling of the [s]tatute of limitations in July of 2013.

Trial Court Opinion, 6/3/21, at 2. As we agree with the trial court, Appellant's first issue fails.

### Issue 2

Appellant next challenges the sufficiency of the evidence underlying the trial court's finding that Appellant owes the 2014, 2015 and 2016 payments under the CA. Brief for Appellant at 29. Appellant asserts the damages award "is not based on any services rendered by Toth, but rather merely on his testimony that he was **available** to provide services during that time period." *Id.* (emphasis in original). According to Appellant, the CA did not require mere availability and "only requires payment when services are rendered." *Id.* Appellant argues: "The 'services' contemplated by the [CA] include sharing aluminum industry information and assisting in identifying, structuring, and developing strategic data." *Id.* at 29-30. Although the CA requires Toth "will be available on request," Appellant claims "availability" in and of itself is not a "service" under the agreement. *Id.* at 30. Appellant directs our attention to the lack of evidence regarding services Toth rendered in 2014, 2015 and 2016. *Id.*

Appellant acknowledges: "While it is technically true that Toth's phone records reflect calls from January 1, 2011, through December 31, 2014, they do not in fact evidence anything like a 'continued stream' of communication after July 2013." *Id.* at 32. Appellant acknowledges Toth placed three phone calls to Gallo on December 12, 2014. *Id.* However, Appellant argues Gallo had not been employed by Appellant for over a year by that date. *Id.* Appellant emphasizes the lack of communication between Toth and Appellant after July 2013. *Id.* at 32-33.

As set forth above, the CA expressly required Toth "be available on request[.]" *See* N.T., 6/24/20, Defense Exhibit D. At trial, Toth testified he consulted with Appellant's employees, responded to questions from Appellant's employees, and remained available throughout the term of the contract. N.T., 6/24/20, at 548-50. The trial court reasoned:

> Toth [] testified that he did provide guidance to [Appellant's] employees regarding operation of the shredder and the aluminum market, especially during the initial process of the sale and movement of the shredder. Toth presented into evidence phone records which show a continued stream of phone correspondence with [Appellant] and its employees, even past the time in July of 2013 whe[n] he ceased selling materials to [Appellant]. Looking at the evidence in sum, the [c]ourt is not convinced that [] Toth did not perform his minimum requirements under the contract, and so the [c]ourt finds the contract was breached by [Appellant].

Trial Court Opinion, 1/15/21, at 21. The trial court's findings are supported by the record and its reasoning is sound. As "the fact-finder is free to believe all, part, or none of the evidence, and to assess the credibility of the

witnesses," we cannot grant Appellant relief on its second issue. *Berg v. Nationwide Mut. Ins. Co.*, 235 A.3d 1223, 1228 (Pa. 2020).

## Issue 3

Appellant next challenges the trial court's failure to apply the doctrines of waiver, estoppel and/or laches to bar Toth's breach of contract action. Appellant's Brief at 34. Appellant relies on Toth's testimony that Appellant "failed and outright refused to make the first payment allegedly due in April 2012." *Id.* Toth did not enforce his right to payment until April 2018. *Id.* Appellant states, "[d]uring this period, [Appellant] specifically asked Toth if there were any other agreements between the parties, aside from the ROFRA," and Toth did not disclose the CA. *Id.* at 35. According to Appellant, Toth mislead and prejudiced Appellant through "his years of silence and inaction[.]" *Id.* at 38. Appellant asserts it could have mitigated the prejudice and damages had Toth disclosed or asserted his CA claim earlier. *Id.* Appellant argues the doctrines of waiver, estoppel and laches are designed to address this situation. *Id.*

The doctrines of waiver and estoppel are defenses to a breach of contract claim:

> Waiver is the voluntary and intentional abandonment or relinquishment of a known right. Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.

***MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P.***, 47 A.3d 137, 154 (Pa. Super. 2012) (citation omitted).  Estoppel is "a doctrine sounding in equity, [which] recognizes that an informal promise by one's words deeds, or representations which leads another to rely justifiably thereon to his own injury or detriment ...." ***Novelty Knitting Mills, Inc. v. Siskind***, 457 A.2d 502, 503 (Pa. 1983).[3]

The trial court found "[a]t no point did [Appellant] present any evidence which would indicate a clear an unequivocal action on the part of [] Toth waiving his rights under the consulting agreement."  Trial Court Opinion, 6/3/21, at 3.

> There was no inducement or misdirection regarding the CA on the part of Toth directed at [Appellant]—rather, [Appellant] knew of and had possession of the [CA] at all times.  In fact, [Appellant] is the sole party asserting that the [CA] is relevant to its contractual claims, yet [Appellant] did not produce the [CA] in discovery.  "A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." ***Terraciano v. Dept. Of Transp., Bureau of Driver Licensing***, 753 A.2d 233, 237 (Pa. 2000).  As such, laches and estoppel are inapplicable here.

---

[3] Laches is an affirmative defense to an equitable claim.  ***Fulton v. Fulton***, 106 A.3d 127, 131 (Pa. Super. 2014) (doctrine of laches is an equitable bar to the prosecution of stale claims and is "the practical application of the maxim that 'those who sleep on their rights must awaken to the consequence that they have disappeared.'").  Laches is not a defense to an action at law. ***See Leedom v. Spano***, 647 A.2d 221, 228 (Pa. Super. 1994) (recognizing laches was not a proper defense to action at law).  Consequently, laches is not a defense to Toth's action at law for breach of contract.

Trial Court Opinion, 8/9/21, at 3-4. The record supports the trial court's determination.

Rather than waiving his rights under the CA, the record reflects Toth repeatedly requested Appellant's compliance, and remained available throughout the CA's term to consult. *See* N.T., 6/24/20, at 548-50. Further, the record reflects no informal promise, words, deeds, or representations by Toth on which Appellant relied to its detriment. Rather, Toth repeatedly requested payment and brought this action as to the 2014, 2015 and 2016 payments within the statute of limitations. *See id.* Because competent evidence of record supports the trial court's determination, we cannot grant Appellant relief on its third issue. *See Bailets*, 181 A.3d at 332.

**Issue 4**

Finally, Appellant claims the evidence does not support the award of damages incurred after 2013. Appellant's Brief at 40. Relying on Toth's testimony that he "had forgotten about" the CA, Appellant asserts the parties litigated the ROFRA during this timeframe, "acting as if no CA existed." *Id.* at 41. Appellant argues it could have mitigated its damages by seeking declaratory relief or utilizing Toth's services during this time period. *Id.* Appellant argues there is no evidence Toth rendered any consulting services, or that he was "available" for consultation after severing communications with Appellant. *Id.* According to Appellant, even if Toth had communicated with Appellant in 2014, there is no evidence to support an award of damages

thereafter. *Id.* at 42. "Thus, Toth's damages should be reduced by $200,000, or by $100,000 at a minimum, with a commensurate reduction in pre-judgment interest." *Id.*

Contrary to Appellant's claim, the record supports the damages awarded for breach of the CA in 2014, 2015 and 2016. As the trial court explained,

> Toth testified that he did hold himself available during the period of the consulting agreement to provide on demand consulting services to [Appellant]. … [] Toth testified that he did provide guidance to [Appellant's] employees regarding operation of the shredder and the aluminum market, especially during the initial process of the sale and movement of the shredder. Toth presented into evidence phone records which show a continued stream of phone correspondence with [Appellant] and its employees, even past the time in July of 2013 where he ceased selling materials to [Appellant]. Looking at the evidence in sum, the [c]ourt is not convinced that [] Toth did not perform his minimum requirements under the contract, and so the [c]ourt finds the contract was breached by [Appellant].

Trial Court Opinion, 1/15/21, at 21. We agree with and adopt the trial court's reasoning. *See id.*

Regarding the award of prejudgment interest, we review the award for an abuse of discretion. *Cresci Constr. Servs. v. Martin*, 64 A.3d 254, 258 (Pa. Super. 2013). An abuse of discretion is more than a mere error in judgment; rather, it requires a finding that the trial court overrode or misapplied the law, or that the decision was manifestly unreasonable or the result of bias, prejudice, partiality, or ill-will as evidenced by the record. *Kraisinger v. Kraisinger*, 34 A.3d 168, 175 (Pa. Super. 2011).

Pennsylvania has followed the Restatement (Second) of Contracts § 354, which provides:

> If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

***Krishnan v. Cutler Group, Inc.***, 171 A.3d 856, 874 (Pa. Super. 2017) (quoting Restatement (Second) of Contracts § 354)). The comments to Section 354 state: "Unless otherwise agreed, interest is always recoverable for the non-payment of money once payment has become due and there has been a breach. … The sum due is sufficiently definite if it is ascertainable from the terms of the contract…." Restatement (Second) of Contracts § 354 cmt. c; ***accord Krishnan***, 171 A.3d at 874.

Our review discloses the CA definitively set the amount due for Toth's consulting services, and the annual dates for payment. The trial court properly awarded Toth prejudgment interest at the statutory rate for each of Appellant's breaches of the CA (2014, 2015 and 2016).

## Toth's Cross-Appeal at 807 WDA 2021
## (The CA Case)[4]

Toth presents the following issue:

> Whether the trial court erred in concluding Toth waived his ability and rights to request that [the] trial court modify the decision of the Somerset County Court barring portions of Toth's claims under the [CA] due to the statute of limitations because [Appellant]

_____

[4] Toth's cross-appeal in the CA case is argued at Issue E in Defendants' brief.

fraudulently concealed the existence of the CA and the alleged relationship between the CA, ROFRA and an Agreement of Sale ("AOS")?

Defendants' Brief at 5 (some capitalization omitted).

Toth claims the trial court erred in concluding he waived his right to request modification of the Somerset Court's decision, "as a result of [Appellant's] fraudulent concealment of the existence and the alleged relationship of the CA, ROFRA and the [Agreement of Sale (AOS)] during discovery." Defendants' Brief at 50. Specifically, Toth alleges Appellant's fraudulent concealment of the CA to toll the statute of limitations to his claims regarding breaches of the CA in 2012 and 2013. *Id.* at 54. According to Toth, the Somerset Court's decision was unappealable as an interlocutory order, and under the coordinate jurisdiction rule, the decision barring his claims for 2012 and 2013 became the law of the case. *Id.* at 50-51.

Toth claims Appellant first raised the relationship between all of the parties' agreements during trial. *Id.* at 51. Toth acknowledges "the trial court correctly concluded that the three agreements were in fact wholly separate agreements despite [Appellant's] argument that all three agreements were related." *Id.* at 52. However, Defendants argue,

[g]iven its position, [Appellant] should have not only disclosed but should have supplied the CA in its discovery response. [Appellant's] failure to disclose the alleged relationship between the CA and the ROFRA and its failure to produce the CA in response thereto, during discovery, was a fraudulent concealment of the CA, which caused Toth to relax his pursuit of his claims under the CA. If Toth had been provided a copy of the CA at that

time, which was within the statute of limitations for that claim, Toth would have pursued those claims under the CA.

*Id.* Thus, Toth claims the statute of limitations should have been tolled regarding his claims under the CA. *Id.* at 54-55.

This Court has addressed fraudulent concealment as follows:

Where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry," the defendant is estopped from invoking the bar of the statute of limitations. Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. Mere mistake, misunderstanding or lack of knowledge is insufficient however, … and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

*Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 248 (Pa. 2021) (quoting *Molineux v. Reed*, 532 A.2d 792 (Pa. 1987) (citations and quotation marks omitted)). However, "even affirmatively misleading acts do not estop a defendant from invoking the statute of limitations if the party has failed to act with reasonable diligence." *Rice*, 255 A.2d at 249 (citation omitted).

Instantly, the trial court determined:

Fraudulent concealment cannot apply where, as here, the party asserting the concealment was aware of the thing that is alleged to have been concealed. It is undisputed [] Toth was aware at all times of the Consulting Agreement. He has made no assertion that [Appellant] caused him to relax his vigilance or deviate from his right of inquiry into the facts. There is thus no practicable way for [] Toth to assert that [Appellant] was engaging in any form of concealment ….

Trial Court Opinion, 6/3/21, at 12 (citation and quotation marks omitted).  We agree with and adopt the reasoning of the trial court.  ***See id.***  Accordingly, no relief is due.

## Defendants' Appeal at 807 WDA 2021
## (The ROFRA Case)

In their cross-appeal, Defendants present the following issues:

A.     (1) … [W]hether the trial court erred by finding that an ambiguity existed as to any term in the written ROFRA such that the parties intended to include the aluminum sales of EMF [Development Corporation ("EMF")] facilities?

(2) Whether the trial court erred in failing to apply the equitable remedy of reformation to the [ROFRA,] where the trial court found an ambiguity and a mutual mistake in the written ROFRA and found that the parties intended that the ROFRA include the sales of Aluminum of EMF … facilities?

B.  Whether the trial court erred by failing to recognize and follow well established corporate law and corporate formalities in awarding damages against [Defendants] arising solely from EMF's failure to offer its aluminum for sale to Appellant, when EMF is a non-party to the ROFRA and a non-party to the action?

C.    Whether the trial court abused its discretion in failing to conclude that the ROFRA was repudiated and thereafter whether the trial court also erred in concluding that the doctrine was not legally applicable to this type of contract, thus failing to apply the doctrine of anticipatory repudiation?

D.    Whether the trial court erred in awarding damages and/or prejudgment interest computed from the date the ROFRA was signed rather than upon the dates upon which [Appellant] suffered an actual loss?

Defendants' Brief at 5 (Issue A subsections renumbered).

## Issue A (1)

Defendants first claim the trial court erred in concluding the ROFRA contained an ambiguity. Defendants' Brief at 22. Defendants challenge the court's interpretation of the ROFRA provisions so as to apply to **all** facilities owned by Toth, including EMF. *Id.* at 22-23. Upon finding an ambiguity, Defendants argue, the court erred in not correcting the ambiguity and the parties' mutual mistake by reforming the ROFRA. *Id.* at 23.

In support, Defendants argue Toth could not bind EMF, a separate entity, to the terms of the ROFRA, or force EMF to offer its assets for sale. *Id.* at 24. According to Defendants, "EMF can be made a party only by the application of the equitable doctrine of reformation of the contract to include EMF as a party." *Id.* at 25. Defendants further claim mutual mistake by the parties. *Id.* at 26. Defendants assert that given the mutual mistake, the trial court erred by not reforming the ROFRA. *Id.* Defendants argue they cannot be legally subject to damages for EMF's breach, and the entire action must fail because Appellant failed to join EMF as an indispensable party. *Id.* at 27, 30.

Established law provides that

[d]etermining the intention of the parties is a paramount consideration in the interpretation of any contract. The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. However, … where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.

> We first analyze the contract … to determine whether an ambiguity exists requiring the use of extrinsic evidence. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense….

*Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 389-90 (Pa. 1986) (citations and quotation marks omitted). "While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 469 (Pa. 2006). "Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter." *Id.* at 468.

Here, the ROFRA stated:

> Seller hereby grants to Alumisource the right of first refusal to purchase aluminum materials, including but not limited to, UVC, aluminum siding, aluminum clips, aluminum extrusions, aluminum heat and cast aluminum **from any and all of Seller's existing facilities during the term of this Agreement.**

N.T., 1/15/21, Exhibit 1 (ROFRA); *see also id.* at 54-55 (Hudock quoting the ROFRA). The ROFRA defined "Seller" as Toth and Kantner, collectively. N.T., Exhibit 1.

The trial court concluded the ROFRA's reference to "any and all of Sellers' existing facilities" is ambiguous, stating:

> Here, it is clear that the term "any and all of Seller's existing facilities" is ambiguous and indefinite, **as it is not explained anywhere within the four corners of the contract what facilities fall within this categorization.** Parol evidence is thus required to clarify which facilities Toth is required to include in his offers to Alumisource.

Trial Court Opinion, 6/3/21, at 13-14 (emphasis added). We agree with and adopt the trial court's conclusion that the ROFRA is ambiguous as to the scope of "seller's existing facilities." ***See id.***

Mindful of our standard of review, the record evidence establishes that when the parties executed the ROFRA, Hudock was aware of two scrap yards owned by Kantner and one (EMF) owned by Toth. N.T., 6/22/20, at 52. After receiving the signed ROFRA, Hudock emailed Toth for clarification of the "existing facilities," stating:

> [A]s you know, we agreed that the right of refusal would apply to all the yards owned by you, not just Kantner Iron Metal. I would like the agreement to reflect our intentions….

***Id.***, Exhibit 15; ***see also id.*** at 52 (Hudock's testimony quoting Exhibit 15).

Toth responded:

> "Gabe, you're getting a bit paranoid. Read paragraph 1. It gives you the right of refusal for all of John Toth's existing facilities. I can't give you any more than that. John.

***Id.*** at 53 (quoting response from Toth). In interpreting "Seller's existing facilities," the trial court found:

> Parol evidence in the form of the emails between Mr. Toth and Mr. Hudock … is helpful in clarifying the intention of the parties. It is undisputed that Mr. Toth's facilities at the time of contracting were exclusively Kantner and EMF, although this is not made known through the plain language of the ROFRA. The emails directly address this issue, with Mr. Hudock requesting confirmation that the ROFRA pertains to all yards owned by Mr. Toth, not just Kantner. Mr. Toth replies in the affirmative, admonishing Mr. Hudock for being "paranoid." This exchange, taken together with the language of the ROFRA, shows a clear meeting of the minds on all terms of the contract, including the inclusion of EMF as one of "Seller's existing facilities." …

Trial Court Opinion, 1/15/21, at 13-14.  As the record supports the trial court's interpretation, and we discern no abuse of discretion or error.  ***See Bailets***, 181 A.3d at 332.

Defendants also failed to establish a "mutual mistake" which would invalidate the ROFRA or compel reformation.

> Mutual mistake will afford a basis for reforming a contract.  Mutual mistake exists, however, only where both parties to a contract [are] mistaken as to existing facts at the time of execution. Moreover, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing.

***Zurich Am. Ins. Co. v. O'Hanlon***, 968 A.2d 765, 770-71 (Pa. Super. 2009) (citations omitted).  Here, Defendants failed to establish **both** parties were mistaken as to facts when they executed the ROFRA.  Defendants at best established their mistaken belief as to the scope of the ROFRA.  Because Defendants' claim of mutual mistake is not supported by clear and convincing evidence, reformation of the ROFRA was not warranted.  ***See id.***

Defendant's assertion that Appellant failed to join EMF as an indispensable third party likewise fails.  An indispensable party is one whose "rights are so connected with the claims of the litigants that no decree can be made without impairing or infringing upon those rights."  ***Sprague v. Casey***, 550 A.2d 184, 189 (Pa. 1988) (citations omitted).  ***See also Commercial Banking Corp. v. Culp***, 443 A.2d 1154, 1156 (Pa. Super. 1982) ("A person is a necessary and indispensable party only when his rights are so connected

with the claims of the litigants that no decree can be made without impairing his rights."). "If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." *Orman v. Mortgage I.T.*, 118 A.3d 403, 406 (Pa. Super. 2015) (citation omitted).

Appellant did not seek redress against EMF. Further, Defendants failed to demonstrate EMF's rights would be prejudiced by any decision of the trial court, including the judgment against Defendants. Consequently, this issue fails. *See id.* In summary, viewing the evidence in a light most favorable to Appellant, as required by our standard of review, Defendants are not entitled to relief as to Issue A. *See Bailets*, 181 A.3d at 332.

## Issue B

Defendants argue the trial court improperly failed to apply corporate law and formalities when it awarded damages for sales of aluminum by EMF, a nonparty to the ROFRA and related legal proceedings. Defendants' Brief at 35. Defendants claim the evidence "fails to support a finding that Toth owns any facilities or aluminum individually." *Id.* at 36-37. According to Defendants, the trial court misapplied this Court's decision in *PNC Bank v. Kerr*, 802 A.2d 634 (Pa. Super. 2002), in concluding "that by Toth's signature to the ROFRA, Toth [wa]s binding himself to obligate EMF's facilities and assets to the ROFRA." Defendants' Brief at 37. Defendants challenge the court's

failure to recognize that a corporation's assets are not the property of its shareholders. *Id.* at 35-36. Defendants assert:

> The trial court disregards all legally applicable corporate principles by imposing liability on [Defendants]. … EMF is a corporation and, even though Toth owns the shares of EMF, this does not make Toth the owner of EMF's facility or assets, rather than EMF….

*Id.* at 36. According to Defendants, the trial court erred in holding Defendants liable for EMF's actions or inactions, as they do not have authority to bind EMF or pledge assets owned by EMF under the ROFRA. *Id.* at 37.

Defendants further argue there is no basis for piercing EMF's corporate veil. *Id.* at 39. Defendants assert Appellant "neither pled nor presented evidence that would permit the court to pierce the corporate veil of EMF to hold Toth personally liable for damages arising from EMF sales." *Id.* Defendants claim the trial court should have found mutual mistake and reformed the ROFRA to include EMF. *Id.* at 40.

As discussed above, there is no merit to Defendants' claim for reformation of the ROFRA based on mutual mistake. Appellant did not seek damages from EMF, or attempt to pierce the corporate veil based on EMF's nonperformance. As the trial court determined:

> The doctrine against piercing of the corporate veil in a contract context generally means that "the breach of the contract is the breach of a promise made by the corporation, and not the breach of any promise extended by the corporate officer. It follows that only the corporation may ordinarily be held liable for contract damages." *Loeffler v. McShane*, 439 A.2d 876, 879 (Pa. Super. 1988). This doctrine is inapplicable to the present situation, however, where EMF was not a contracting party, but instead Defendant Toth was a contracting party under the ROFRA. A

- 31 -

discussion of corporate formalities is irrelevant where Defendant Toth personally held himself out as liable under the ROFRA regarding sales of all of his presently existing scrap facilities….

Trial Court Opinion, 6/3/21, at 7. We agree. Thus, we affirm on the basis of the trial court's reasoning with respect to Defendants' Issue B. *See id.*

## Issue C

Defendants next argue the trial court improperly failed to conclude the ROFRA was repudiated. Defendants' Brief at 40. Defendants rely on a December 11, 2012, aluminum specification sheet Appellant provided, setting the terms under which Appellant would agree to purchase aluminum in future offers. *Id.* at 41. Defendants explain:

> The evidence reveals Kantner packaged aluminum under the ISRI standards and sold on a gross weight basis and Tube City, a third party, regularly purchased [Kantner's] aluminum on this gross weight basis. On the other hand, [Appellant's] specification sheet dictated to [Kantner] that Alumisource would only purchase aluminum in the future on a recovery basis, which involved unilateral deductions from the price by [Appellant]. Therefore, [Appellant] was not matching the terms offered to [Kantner].

*Id.* at 41-42 (citations omitted). Further, Defendants claim Appellant repudiated the ROFRA in a June 2013 phone conversation. *Id.* at 42. In that conversation, Appellant indicated it would never agree to purchase loads on the terms of the third-party offers presented by Defendants. *Id.*

> The trial court found no merit to Defendants' claim:

> Defendants can point to no evidence showing an "absolute and unequivocal refusal to perform" on the part of [Appellant]. Defendants point to a "specification sheet" as alleged evidence of this repudiation[;] however this assertion is belied by the follow-up email from an [Appellant] representative specifically

- 32 -

requesting more offers. Plaintiff's Exhibit "23," Defendants' Exhibit "EE." Defendants also point to a July 2013 phone call between Mr. Hudock and Mr. Toth[;] however the testimony at trial regarding the phone call reflects nothing which comes close to constituting an unequivocal refusal. TR. P. 126-129….

Trial Court Opinion, 6/3/21, at 9. Again, the record evidence supports the trial court's determination.

At trial, Hudock testified Toth offered advice about how Appellant should pay less, and buy aluminum on a gross basis, rather than a recovery basis. N.T., 6/22/20, at 124-25. Hudock explained:

[L]ook, [Toth] can't tell me how to run my business. We have to agree to each load as it comes in. There's no two loads—it's like a fruit salad. Aluminum comes in all types of grades and specifications. You can't buy it in most cases as-is.

*Id.* at 125. Hudock testified that some purchases were made on a recovery basis, others were not. *Id.* at 127.

What I told Toth during the call is we … gave him a price and had to make deductions because it was over a certain allotment. I think we may have bought it with a 2 percent acceptance rate. But if it exceeded that, we had bona fide support that we had to take deductions. We can't pay for metal that's not there.

*Id.* at 128. When asked whether Toth said he would no longer sell aluminum to Appellant, Hudock responded: "It's my understanding he was upset. I think we made a significant adjustment and paid him back what he was concerned about." *Id.* at 12.

This evidence, viewed most favorably to Appellant, supports the trial court's determination that Defendant did not repudiate the ROFRA. Accordingly, we cannot grant relief on Issue C. *See Andrews*, 158 A.3d at

- 33 -

130 (to establish an anticipatory repudiation or breach, the breaching party must have expressed "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so.").

**Issue D**

Defendants next challenge the trial court's calculation of damages and pre-judgment interest from the date the ROFRA was signed, rather than from the date when Appellant suffered actual loss. Defendants' Brief at 47.

"[P]re-judgment interest may be awarded when a defendant holds money or property which belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment." *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa. Super. 1999) (citation and quotation marks omitted). "The fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing." *Linde v. Linde*, 220 A.3d 1119, 1150 (Pa. Super. 2019) (citation omitted).

> While the general rule is that a successful litigant is entitled to interest beginning only on the date of the verdict, it is nonetheless clear that pre-judgment interest may be awarded "when a defendant holds money or property which belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment." *Dasher v. Dasher*, … 542 A.2d 164, 164-65 (Pa. Super. 1988) (quoting *Sack v. Feinman*, 489 Pa. 152, 164, 413 A.2d 1059, 1065 (1980)). Pre-judgment interest in such cases is a part of the restitution necessary to avoid injustice. *Dasher*, at 165.

*Kaiser*, 741 A.2d at 755.

At trial, Appellant presented the expert testimony of James Fellin (Fellin). Fellin explained his detailed calculation of prejudgment interest, which the trial court adopted. *See* Trial Court Opinion, 6/3/21, at 10. Fellin testified, "we calculated the interest on the lost gross profits by year[.]" N.T., 6/22/20, at 197. Fellin subsequently recalculated the interest "as of June 30, 2020[.]" *Id.* at 198. In his expert report, Fellin calculated interest at the statutory rate, stating, "All losses are deemed to have occurred midway through the year/period." Expert Report of Fellin, Exhibit 7 n.2, Attachment 1 n.2. As the record does not support Defendants' claim of improper calculation of pre-judgment interest, Defendants are entitled to relief on Issue D.

For the reasons discussed above, we affirm the trial court's judgment in favor of Toth in the CA case, and in favor of Appellant in the ROFRA case.

Judgments affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2022